Filed 5/23/13; pub. order 6/21/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JOHN M., a Person Coming Under the Juvenile Court Law. | B243107 (Los Angeles County Super. Ct. No. CK34003) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOHN M., SR., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sherri Sobel, Juvenile Court Referee.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Senior Associate County Counsel.

_____

John M., Sr. (father), appeals the dependency court's jurisdictional and dispositional order denying him custody of his son John M. (John). Father, who was incarcerated at the time of John's detention and who was the subject of an amended petition, argues that Welfare & Institutions Code section 361.2[1] provides that a noncustodial parent is entitled to placement consideration without regard to whether such parent is offending or nonoffending. Conceding that, in dependency court, he did not raise the possibility of John's placement with him, father argues nonetheless there was no forfeit. Father also argues that insufficient evidence supports the jurisdictional findings against him. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 21, 2012, DCFS filed a petition alleging that Toni R. (mother) had bipolar disorder, a 25-year history of substance abuse, and was a current daily abuser of heroin, alcohol, and prescription medication. The petition alleged two counts against mother under section 300, subdivision (b).

The detention report stated that John was placed in foster care, and that John's older sibling, J.R., had been removed from mother's care in 1998 and adopted as a result of mother's substance abuse in 2002. At the time of J.R.'s detention, mother and father had custody of John, but father was in prison. John's parents' home was in an unsanitary and unsafe condition, with no utilities and no bed for the minor to sleep on. Mother, in addition to a history of substance abuse, had a history of arrests and convictions for drug related offenses, including possession of a controlled substance.

Department of Children and Family Services (DCFS) received the current referral on January 28, 2012 based on mother's treatment at an emergency room for pain in her left elbow. Mother admitted to emergency room staff that she was injecting heroin into her left arm. After mother's discharge from the hospital, DCFS assessed John's parents' home for a safety plan. On February 1, 2012, the social worker conducted an

---

[1] All statutory references herein are to the Welfare & Institutions Code unless otherwise indicated.

unannounced home visit, and mother admitted she used heroin daily. Mother also took numerous medications for her bipolar disorder. On February 6, 2012, during a follow-up visit, the social worker found the home in disarray, and instructed mother to clean and purchase groceries.

On February 15, 2012, John's maternal grandfather Kenneth R. informed DCFS that John was in the custody of paternal aunt Anna M. against the orders of DCFS, and mother had disappeared. Father was incarcerated in Wasco State Prison.

Anna told DCFS that she had been sober for the past seven years, and had room to care for John. Kenneth was unwilling to care for John. Anna told the social worker that she had previously cared for John because mother was unable to care for him due to her substance abuse. John told DCFS that he did not want to reside with Kenneth.

At the February 21, 2012 hearing, the court found that father was John's presumed father. Mother, whose location remained unknown, was ordered to a drug treatment program with random testing, and given once a week monitored visitation. On March 13, 2012, Christina O., John's adult paternal cousin, was given the right to make educational decisions for John.

On March 20, 2012, DCFS filed an amended petition, adding the allegations under section 300, subdivisions (a) and (b) that Kenneth had physically abused John by hitting him with a belt on the buttocks, and that mother failed to protect John. The petition further alleged under section 300, subdivision (b) that father had a history of substance abuse, including heroin, and that mother and father had a history of engaging in verbal altercations.[2]

DCFS's March 20, 2012 detention report stated that John remained in foster care placement. Mother had an extensive criminal background dating from 1986 including

---

[2] The allegation against father, b-4, alleged that: "The child['s] . . . mother . . . and father . . . have a history of engaging in verbal and physical altercations. The father currently remains incarcerated due to the domestic violence. Such domestic violence by the parents endangers the child's physical health and safety and places the child at risk of physical harm, damage, and danger."

arrest and convictions for various drug offenses, prostitution, disorderly conduct, and robbery. DCFS's jurisdictional report dated March 20, 2012 added that John was doing well in his placement. Father was in prison for a July 2011 altercation with mother in front of father and mother's apartment, at which time mother sustained injuries to her face and head. Neighbors told the paternal aunt that mother threw herself on the car and would not let father leave. Mother told police the mirror broke off and hit her face. However, after leaving a party in their car, father hit mother with his fists repeatedly, causing injuries to mother's head. John, who was not in the car at the time, believed mother had simply cut her head on the car's mirror. John stated his parents were "[v]ery, very super nice." John had seen mother hit father with her hand, and denied that mother and father threw objects at each other. John admitted that Kenneth had disciplined him with a belt. John did not know whether his parents used drugs or alcohol.

John told the social worker mother and father fought at home. Mother sometimes slapped father because they were mad at each other. Although the parents yelled at each other, John did not know why they were angry. John denied that father hit mother. When his parents were fighting, John would go in the other room and try to ignore them.

DCFS further reported that mother's location remained unknown. DCFS had located father in Vacaville State Prison, and attempted to contact him, but had not received a response. Christina told DCFS that John's parents had been involved with each other "'on and off'" for "'at last 10 years.'" Christina believed father was incarcerated for hitting mother. Kenneth denied hitting John, and told DCFS father was in prison for hitting mother.

John's Individualized Education Program (IEP) stated that John performed near grade level academically, but had difficulty relating to his peers due to limited social skills. John engaged in argumentative behavior, was defiant, and had poor control of his anger. John lacked focus and was inattentive, demonstrated significant impairment in his social-emotional function, with resulting adverse effect on his educational performance.

However, John was very verbal and could carry on a conversation with an adult regarding many topics, and had good background knowledge.

On March 19, 2012, Christina's home was approved under the Adoption and Safe Family Act (ASFA), and John was placed in her home.

Father's arrest report from the July 25, 2011 incident disclosed that a neighbor stated she called the police at 12:30 a.m. The neighbor also stated that when the police arrived they found mother bleeding from the head. Mother and father denied any wrongdoing, but mother admitted to police they had been fighting and father had been drinking. Father had ordered her to get into the car and drove off very fast. They went to a party where father continued drinking and after they left to go home, father hit mother on the head, and continued to hit her after they got home.

At the March 20, 2012 hearing, the court set the matter for jurisdictional hearing on April 24, 2012. On April 13, 2012, at a progress hearing, father's counsel announced that father wanted to be present at the April 24, 2012 hearing. At the April 24, 2012, hearing father appeared through counsel, who requested to continue the matter. The court granted a four-week continuance to May 22, 2012.

DCFS filed an information for the May 22, 2012 hearing, to wit: Father had told DCFS he was willing to comply with a reunification plan and that he was scheduled to be released from prison on July 24, 2012. Father denied any domestic violence between him and mother, and stated that mother had lied about the incident. According to father, he and mother were in the car arguing when mother pulled the wheel, causing father to sideswipe a tree. The mirror broke off and hit mother's head. Father denied that Kenneth physically disciplined John. Father was aware of mother's bipolar diagnosis and he had attended some counseling with her. Father denied drug use, but admitted to drinking beer.

On May 22, 2012, father was not present at the hearing and remained in custody despite a removal order permitting him to attend the hearing. The court continued the

matter to July 3, 2012. At the July 3, 2012 hearing, father, although there was a removal order, was again absent. The court continued the matter to July 30, 2012.

At the July 30, 2012 hearing, father was present in court. Father requested the court to dismiss the allegations against him. He argued the July 25, 2011 incident was a "one-time" occurrence and father denied being the perpetrator and asserted that John, who was not present at the incident, had told social workers that mother was the aggressor in his parents' fights. Father had no record of current drug use. The court sustained allegation b-4 against father based upon domestic violence with mother. The court found there was an immediate danger to John's physical and emotional well being if returned to his parents, and ordered John removed from his parents' custody. The court denied reunification services to mother based upon her failure to reunify with J.R. The court ordered reunification services for father consisting of random drug testing, with father to enter a program if he gave a positive test. The court also ordered anger management, parenting class, individual counseling, and monitored visitation two times per week. Father did not object at the hearing to any of these orders, or request custody of John.

## DISCUSSION

### I. Sufficiency of Findings Under Section 300, Subdivision (b)

Father argues that insufficient evidence supports the jurisdictional findings against him because his history of domestic violence did not pose a current risk of harm to John because John was never actually at risk of harm by father's past conduct: John was not present when father beat mother; the July 2011 incident was isolated and had occurred over a year earlier; John reported that both of his parents were very nice; John was not a toddler at the time of the hearing, and thus less at risk if he were present during violence between mother and father; and mother, whose location was unknown, could not fight with father and thus there was no longer a risk of domestic violence proximate to John.

At the jurisdictional hearing, the dependency court's finding that a child is a person described in section 300 must be supported by a preponderance of the evidence. (§ 355, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) We review

6

the dependency court's jurisdictional findings for substantial evidence, and review the evidence in the light most favorable to the dependency court's findings and draw all reasonable inferences in support of those findings. (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.) "Section 300, subdivision (b) provides a basis for . . . jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness caused by the parent's inability to provide regular care for the child because of the parent's mental illness, developmental disability or substance abuse." (*In re James R.* (2009) 176 Cal.App.4th 129, 135.)

A jurisdictional finding under section 300, subdivision (b) requires "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) "Subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness." (*Id.* at p. 823; *In re Alysha S.* (1996) 51 Cal.App.4th 393, 399.)

"In evaluating risk based upon a single episode of endangering conduct, a juvenile court should consider the nature of the conduct and all surrounding circumstances. It should also consider the present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim, and probationary support and supervision already being provided through the criminal courts that would help a parent avoid a recurrence of such an incident. The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending upon present circumstances." (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025–1026.) We must have a basis to conclude there is a substantial risk the parent's endangering behavior will recur. (*Id.* at p. 1026.)

We disagree with father's analysis. The parents' history of domestic violence evidences an ongoing pattern that, while not yet causing harm to John, presented a very real risk to John's physical and emotional health. Both parents hit each other; verbal altercations were frequent; and father engaged in reckless driving with mother in the car. The fact that mother's location is not known does not reduce the risk to John because father could engage in angry and violent behavior toward John without mother being present. John's age would do little to protect him from father's violent outbursts. Finally, the severity of the July 2011 incident is not lessened by the fact it was isolated and in the past; indeed, father was incarcerated for his conduct during that incident that resulted in mother's injury.

## II.     Placement with Father as Noncustodial Parent

Father argues that the dependency court, which proceeded under section 361 in removing John from his custody, erred in failing to apply section 361.2 because although father was incarcerated at the time, he could have arranged for Anna to look after John until father was released from prison. Father contends section 361.2, which does not explicitly limit its reach to nonoffending parents, therefore provides a noncustodial parent is entitled to placement consideration without regard to whether such parent is offending or nonoffending. Conceding that he did not raise the possibility of John's placement with him pursuant to section 361.2 in the dependency court, father argues the issue was nonetheless not forfeited.

### A.     *Forfeiture*

At the outset, a parent's failure to raise placement under section 361.2 in the dependency court forfeits the issue. (See, e.g., *In re A.A.* (2012) 203 Cal.App.4th 597, 605.) Father did not raise the issue at any of the scheduled (and continued) jurisdictional and dispositional hearings, thereby forfeiting the issue under *In re A.A.*, at page 605. Nonetheless, father argues the issue was not waived because the claim presents a pure question of fact that can be decided on undisputed facts, citing *In re V.F.* (2007) 157 Cal.App.4th 962, 968. Further, father asserts that nothing in section 361.2 requires the

8

parent to raise the issue to be considered for custody, instead the statute directs the court to consider whether there is a noncustodial parent desiring custody. Finally, because the trial court used the wrong statutory framework in making findings under section 361, his trial counsel could not lodge reasonable objections.

We find some merit to father's contention that the statutory language, which commands the court to consider a noncustodial parent for placement, precludes forfeiture by the failure to raise the issue in the dependency court. However, the purpose of the forfeiture doctrine is to avoid the situation in which father acknowledges he finds himself here—bereft of a factual record on which to make a compelling argument tailored to the requirements of a different statute. (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.) Thus, we conclude father forfeited the issue by his failure to raise it in the dependency court, which would have permitted the court to determine the applicability of section 361.2 and rule on the issue with an adequate record and argument.

### B. "Nonoffending" Is a Requirement of Section 361.2

Nonetheless, putting aside father's forfeiture of placement under section 361.2, we find on the merits that father was not entitled to consideration under section 361.2 because he was neither nonoffending nor noncustodial.

Section 361.2, subdivision (a), provides in part that "[w]hen a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child." The section provides that "[i]f that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) If the parent wants the child placed with him, the court must do so unless there is clear and convincing evidence of detriment. (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829.)

9

Under section 361.2, subdivision (a), the court examines whether it would be detrimental to temporarily place a child with the nonoffending noncustodial parent; under subdivision (b), the court decides whether that placement should be permanent and whether the court's jurisdiction should be terminated. (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1131.) "[T]he Legislature envisioned a two-step process: under [section 361.2]: subdivision (a), the court examines whether it would be detrimental to temporarily place a child with the nonoffending noncustodial parent; under subdivision (b), the court decides whether that placement should be permanent and whether the court's jurisdiction should be terminated." (*In re Austin P.*, at p. 1131.) In assigning custody of the child to either parent, "the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) If the dependency court finds that placement with the noncustodial parent would be detrimental, the court proceeds as to that parent as if it were removing the child from the custodial, offending parent. The court may provide reunification services under section 361.5, or no services if services are not warranted. (See *In re Terry H.* (1994) 27 Cal.App.4th 1847, 1855; *In re Arianna P.* (2008) 166 Cal.App.4th 44, 53, 58, fn. 8, 59.)

"'Our role in construing a statute is to ascertain the Legislature's intent so [that we may] effectuate the purpose of the law.'" In that regard, "[w]e consider first the words of the statute because they are generally the most reliable indicator of legislative intent." (*In re J. W.* (2002) 29 Cal.4th 200, 209.) Where, as here, "'"the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. [Citation.]" [Citation.] We consider extrinsic aids, such as legislative history, only if the statutory language is reasonably subject to multiple interpretations.'" (*In re W.B.* (2012) 55 Cal.4th 30, 52.)

The word "nonoffending" is not found in the text of section 361.2. This term first appeared in the case law in *In re Marquis D.*, *supra*, 38 Cal.App.4th 1813, where the court used the term to denote a parent who was not involved in the conduct that caused removal of the child from a parental home under section 361. (*In re Marquis D.*, at

10

p. 1823.)  In several subsequent decisions, courts assumed, without deciding, that section 361.2 applied solely to nonoffending parents, and have not analyzed whether the statute could apply to a noncustodial parent who was also the subject of the current dependency proceeding and have characterized section 361.2, subdivision (a) as permitting placement with a "nonoffending noncustodial parent," as though "nonoffending" is a separate statutory requirement.  (See, e.g., *In re Joshua G.* (2005) 129 Cal.App.4th 189, 202; *In re Austin P.*, *supra*, 118 Cal.App.4th at pp. 1129–1132; *In re Isayah C.* (2004) 118 Cal.App.4th 684, 700.)  While none of those decisions specifically discusses the meaning of "nonoffending," it appears that they use "nonoffending noncustodial parent" as shorthand for the statutory requirement of a parent "with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300."  (§ 361.2, subd. (a).)

However, *In re V.F.*, *supra*, 157 Cal.App.4th 962, the Fourth Appellate District made no such distinction.  "[W]hen a noncustodial parent is incarcerated, the [dependency] court must proceed under section 361.2 to determine whether the incarcerated parent desires to assume custody of the child.  Unlike section 361.5, section 361.2 does not distinguish between an offending and nonoffending parent, and the court applies section 361.2 without regard to the characterization of the parent as offending or nonoffending." (*In re V.F.*, at pp. 965–966.)  If a noncustodial, incarcerated parent seeks custody of the child, the court must determine whether "placement with that parent would be detrimental to the [child's] safety, protection, or physical or emotional well-being." (§ 361.2, subd. (a).)  Among the factors in determining detriment are the noncustodial, incarcerated parent's ability to make appropriate arrangements for the care of the child and the length of that parent's incarceration.  (*In re S. D.* (2002) 99 Cal.App.4th 1068, 1077*; In re Isayah C.*, *supra*, 118 Cal.App.4th at p. 700.)

In *In re A.A.*, *supra*, 203 Cal.App.4th 597, the child was removed from his mother's care due to the mother's drug charges based on section 300, subdivision (b), and the court placed the child with the father; dependency jurisdiction was terminated.

11

However, while mother was incarcerated on the drug charges, a new dependency proceeding was initiated based upon the father's physical abuse of the child, and after the father failed to reunify, the court set a selection and implementation hearing. Mother filed a section 388 petition seeking reunification services, and argued on appeal that the court erred in failing to consider her for the child's placement under section 361.2. (*In re A.A.*, at pp. 602–604.) The Fourth Appellate District in *In re A.A.* held that the court was not required to consider the mother for placement because she was neither nonoffending nor noncustodial within the meaning of section 361, subdivision (c) and 361.2. (*In re A.A.*, at p. 604.) Recognizing that although *In re V.F.*, *supra*, 157 Cal.App.4th 962 had found the fact of incarceration should not preclude a noncustodial parent from obtaining custody under section 361.2 where the parent can make arrangements for the child's care, *In re A.A.* distinguished the case before it from *In re V.F.* on the basis that mother was the subject of a section 300, subdivision (b) allegation in the current dependency proceedings. "While an incarcerated parent can avoid jurisdiction under section 300, subdivision (g) by arranging for his or her child's care [citations], the same is not true of a parent whose acts or omissions have led to jurisdictional findings under section 300, subdivision (b)." (*In re A.A.*, at p. 607.)

Further, *In re A.A.*, *supra*, 203 Cal.App.4th 597 rejected the core holding of *In re V.F.*, *supra*, 157 Cal.App.4th 962 and found that the "[dependency] court should not be required to consider placing a child with an incarcerated parent who has previously been the subject of a removal order due to acts or omissions by that parent that brought his or her child within the description of section 300 and whose custody right has not been restored. In other words, if the noncustodial status of the incarcerated parent is due to a prior dependency order removing custody, and there has been no intervening restoration of the parent's right to physical custody of the child, the court need not inquire if that parent desires to have the child placed with him or her." (*In re A.A.*, at p. 608.) *In re A.A.* elaborated: "a parent 'with whom the child was not residing at the time' of the initiation of the dependency, whether or not due to a family law custody order, is presumptively

12

entitled to custody because he or she has not been previously found to pose a risk of harm to the child. It is reasonable to assume the Legislature intended to require a juvenile court to first consider placement of a child with this class of parent, to avert the trauma of a foster placement. A parent who is noncustodial because of a prior finding of detriment is not merely a parent 'with whom the child was not residing at the time' of the events that resulted in the dependency." (*Id.* at p. 610.)

Similarly, in *In re Isayah C.*, *supra*, 118 Cal.App.4th at page 700, the court held that the dependency court may consider placing a child with a noncustodial, incarcerated parent under section 361.2 if that parent seeks custody of the child, the parent is able to make appropriate arrangements for the child's care during the parent's incarceration and placement with the parent is not otherwise detrimental to the child. The *Isayah C.* court based its decision on the case law that held the juvenile dependency system has no jurisdiction to intervene "when an incarcerated parent delegates the care of his or her child to a suitable caretaker" *and there is no other basis for jurisdiction under section 300.* (*Isayah C.*, at p. 700.) "At disposition, the length of a parent's incarceration may be a factor in determining detriment under sections 361, subdivision (c) and 361.2, subdivision (a), but a finding of detriment cannot be based solely on the fact a parent is incarcerated." (*In re Noe F.* (2013) 213 Cal.App.4th 358, 369.)

Thus, *In re A.A.*, *supra*, 203 Cal.App.4th 597 and *In re Isayah C.*, *supra*, 118 Cal.App.4th 684 recognize that not all bases for dependency court jurisdiction are created equal. A section 300, subdivision (g) allegation when merely based on incarceration should not deny a noncustodial parent custody when the parent is able to make arrangements for the child. An allegation under subdivision (g) is distinct from a section 300, subdivision (b) allegation. Thus, applying this rationale to father here, his status as an offending parent under section 300, subdivision (b) precludes him from being considered for custody of John. Father is not merely a parent with whom the child was not residing at the time of the initiation of the dependency; rather, father and mother shared custody of John. The dependency court had sustained allegations against Father

based upon his quarrels and domestic violence history with mother. Thus, Father does not stand in the same shoes as the parents in *In re V.F.*, *supra*, 157 Cal.App.4th 962 or *In re Isayah C.*, who were nonoffending but incarcerated. Further, Father was a custodial parent until his incarceration for domestic violence separated him from John. As such, because father's criminal offense was the cause of his noncustodial status, we do not find he fits within the purpose of the statute to keep children with their parents if possible.

Nonetheless, father makes numerous arguments why section 361.2 should apply to him. He asserts that a detriment finding cannot be implied from the record here because it was not clear that placement with father would be detrimental, and further the court applied the detriment standard under section 361, not section 361.2. Father points out that his substance abuse history did not support such a finding as there was no current history of drug use and father's domestic violence past was not directed at John. We need not reach the detriment issue here because under section 361.2, we would not get to this stage of the analysis due to father's sustained section 300, subdivision (b) allegation.

Father argues that reading a nonoffending requirement into the language of section 361.2 would frustrate the purpose of the statute to keep the child a parent, any parent, if possible; with a nonoffending requirement inserted, the dependency court could not conduct a careful or individualized placement plan, and all parents who have a jurisdictional finding would never have a chance at custody. We disagree. Parents who have a section 300, subdivision (g) finding may or may not be awarded custody, depending on the circumstances. The two-step process envisioned under the statute permits the court to tailor the custody arrangement with appropriate reunification services to the parent awarded custody, if necessary; therefore, father's reading of the statute ignores this important function of the statute.

Lastly, father argues reading a nonoffending requirement into the statute would undermine the requirement that there be clear and convincing evidence of detriment before placement with a noncustodial parent can be denied, while a jurisdictional finding need only be made under the preponderance of the evidence standard. (See, e.g., *In re*

14

*Marquis D.*, *supra*, 38 Cal.App.4th at pp. 1827–1829.) Father's analysis misses the mark. *In re Marquis D.* also recognized an implicit nonoffending requirement in section 361.2. As explained in *In re Marquis D.*, "applying a clear and convincing standard of proof to remove custody from the custodial parent while denying placement with the noncustodial parent based on a preponderance of the evidence would lead to the anomalous result that a parent who had *no connection with the circumstances that brought the child within the jurisdiction of the court* could have his or her rights terminated upon a lesser showing than the parent who created those circumstances." (*Id.* at p. 1829, italics added.) *In re Marquis D.* likewise implicitly recognizes the nonoffending requirement in section 361.2; thus father, who does not qualify for application of section 361.2 in the first instance, is not subjected to a lesser standard of proof than an offending parent.

## DISPOSITION

The order is affirmed.

JOHNSON, J.

We concur:

MALLANO, P. J.

ROTHSCHILD, J.

15

Filed 6/21/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JOHN M., a Person Coming Under the Juvenile Court Law. | B243107<br>(Los Angeles County<br>Super. Ct. No. CK34003) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN M., SR.,<br><br>    Defendant and Appellant. | CERTIFICATION AND ORDER FOR PUBLICATION |

The opinion in the above-entitled matter filed May 23, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


MALLANO, P. J.            ROTHSCHILD, J.            JOHNSON, J.