Filed 10/28/13  In re V.H. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re V.H. et al., Persons Coming Under the Juvenile Court Law. | B247848 (Los Angeles County Super. Ct. No. CK 97318) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ROSARIO M. et al., Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Donna Levin, Juvenile Court Referee.  Affirmed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant Rosario M.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant Marco H.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

Rosario M. (mother) and Marco H. (father) appeal the juvenile court's jurisdictional and dispositional orders. Appellants challenge the sufficiency of the evidence to show that they failed to protect their two children, V.H. and R.M., from harm. Father additionally contends the juvenile court abused its discretion by ordering father to participate in a family maintenance program. We reject both challenges, and affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Petition

On January 15, 2013, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition on behalf of appellants' two children, 17-year-old V.H. and five-year-old R.M. The petition, as later sustained, alleged that each child came within the juvenile court's jurisdiction because the child has suffered, or was at a substantial risk of suffering, serious physical harm or illness "as a result of the failure or inability of his or her parent . . . to supervise or protect the child adequately." (Welf. & Inst. Code, § 300, subd. (b).)[1]

The petition alleged that: "In January of 2013 and on prior occasions in 2012, the children['s] . . . mother . . . and father . . . placed the children in a detrimental and endangering situation in that the parents allowed the children's adult [half] sibling, Sergio H[.], who the parents knew, is frequently under the influence of marijuana in the children's home, in the presence of the children, and has a history of violent and assaultive behavior to reside in the children's home and have unlimited access to the children. On 12/28/2012, the adult sibling swung a knife at the children's mother, in the presence of the child [V.H.] . . . The parents failed to protect the children. Such a detrimental and endangering situation established for the children by the parents and the parents' failure to protect the children endangers the children's physical health and safety and creates a detrimental home environment, and places the children at risk of physical harm, damage, danger and failure to protect."

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

## 2. *Social Worker's Reports*

On January 3, 2013, social worker Lisa Miller received an "Immediate Response" referral after Sergio allegedly assaulted mother with a knife. The referral alleged the children were victims of general neglect by mother.

The referral stems from the following facts.

On December 28, 2012, V.H. called the police after Sergio threatened mother with a knife. According to V.H., Sergio said Allah told him that their mother was going to die. Sergio pulled a rectangular blade out of his pocket and swung it at mother. Although she was aware of Sergio's marijuana use, V.H. was uncertain whether Sergio was under the influence at the time of the incident. V.H. denied being scared, but later admitted she was "a little bit scared." She believed Sergio had the "intentions to hurt [her] mom."

R.M. did not see the altercation, but believed Sergio "tried to kill [his] mom." Both V.H. and R.M. stated they were not afraid of Sergio and wanted to see him because they missed him.

Mother reported that Sergio became angry after she refused to convert to Sergio's religion of choice. Sergio told her Allah was offended and she needed to die. He swung at mother, but she was not sure what was in his hand. Mother stated she was not afraid of Sergio. According to mother, Sergio was never violent with her, V.H. or R.M. She believed the attack was an isolated incident and would accept Sergio into her home after his release from the hospital. Although Miller explained to mother that doing so would expose the children to a risk of harm,[2] mother was more concerned about Sergio's health and wellbeing. Mother wanted "to help Sergio" because "no one has been able to help him." She indicated she would "not let him back in the home" until she could "get some legal way of allowing him into [her] home."

---

[2] Miller pointed to Sergio's status as a registered sex offender, his paranoia and hallucinations, which led to his attack on mother, and his use of marijuana in the children's presence as support for her belief that Sergio's presence in the home would pose a risk of harm to the children.

Father was not home at the time of the incident. When questioned, he stated Sergio did not exhibit violent behavior towards him or any other family member. Father maintained that he was "always . . . protective of [his] children" and has not allowed Sergio to return to the family home. Nevertheless, father requested guidance from the court regarding "how and when Sergio will be allowed back in the home." Father also indicated that DCFS should be more focused on helping Sergio.

At the time of his assault on mother, Sergio was living in the family home for at least two or three years.

Both parents acknowledged Sergio's use of marijuana, but believed it was prescribed for medical purposes. V.H. and mother reported that Sergio smoked marijuana outside of the house, in a car on the driveway.

Both parents acknowledged Sergio's criminal conviction of attempted sexual battery,[3] but believed he was wrongfully accused. V.H. reported that she overheard Sergio was arrested for "something about sexual, but he has never tried to hurt [her]."

On January 10, 2012, a team decision meeting was held. Mother signed a "Safety Action Plan," which required mother to keep the children from having any contact with Sergio, unless law enforcement was present and/or Sergio was undergoing a DCFS-verified mental health treatment. Nevertheless, DCFS concluded the children's safety in the home could not be assured and the risk for future harm was high. DCFS specifically noted the parents' "denial of the seriousness of . . . Sergio's past criminal history and the seriousness of the incident [when Sergio threatened mother with a knife]." As such, DCFS advocated for court intervention to ensure the family received services necessary to provide for the children's safety and wellbeing, including parenting programs for the parents and age appropriate therapy for the children. DCFS further recommended family maintenance services for both parents to help them gain a better understanding of

---

[3]    In 2007, Sergio was convicted of attempted sexual battery, in violation of Penal Code sections 664 and 243.4, subdivision (d), and sentenced to two years in state prison. He is a registered sex offender.

4

Sergio's mental health problems.  Provided that all placement requirements were met, DCFS recommended the children remain in mother and father's home.

### 3.  *Jurisdictional and Dispositional Hearing*

The jurisdictional hearing was held on February 26, 2013.  The parents' and children's attorneys presented argument but no testimonial evidence on behalf of the family was presented.

Father's attorney argued the petition should be dismissed in its entirety because "[Sergio] is not residing in the home" and DCFS cannot "meet their burden of proving by preponderance of the evidence that these children are currently at risk of harm."  Father's attorney further argued the parents would know what to do if Sergio were to return because mother signed a safety plan and agreed not to allow Sergio to return home.

Mother's attorney also argued for the dismissal of the petition because "[t]here's not a scintilla of evidence to support" the children's current risk of harm.  She argued "the parents have done everything that they can do to ensure the safety of those children."  Counsel further stated that Sergio was sleeping in a shelter and that mother "would be able to do [a family support group with the National Alliance on Mental Illness (NAMI)] on her own."[4]

The children's attorney joined in the parents' request for dismissal.  Counsel argued the children were not afraid of Sergio and understood his mental health issues.  Counsel also stated the children believed Sergio's assault on their mother was an "isolated incident."

DCFS argued, however, that the parents were uncooperative and in denial of the circumstances leading up to the filing of the petition.  As such, DCFS was concerned the parents would eventually allow Sergio back into the family home.  DCFS requested the

---

[4]     The National Alliance on Mental Illness provides free information, education and support for individuals with mental illnesses and their families. (<http://www.namicalifornia.org/support_groups.php?page=FamilySupport&lang=eng#. Ui3yDBbvbww> (as of Oct. 24, 2013).)

court to supervise the family to ensure they received the necessary services to remain a family and to be better educated in dealing with a child with mental health issues.

### 4. *Juvenile Court's Jurisdictional Findings and Disposition*

The juvenile court acknowledged "how difficult it must be for [the parents] to have a child like Sergio." However, the court continued: "[T]here was a violent incident that occurred. . . . [¶] I am not convinced that the parents really understand how serious this is. . . . They can visit Sergio. I am just saying that I don't want him unmonitored and alone with [V.H.] and [R.M.] I don't think he should come to the family home. I don't think he should be around them."

The court further stated: "I think the parents should go to NAMI and have any other support that they can have to kind of make them realize what the true nature is . . . [T]his is about the protection of the kids, not about the comfort of the parents. I want them to get help for their son and get protection for the other kids. There needs to be oversight to make sure that . . . there is understanding here of what exactly is going on."

The court assumed jurisdiction under section 300, subdivision (b). It made a "home of parent" order for both children, and ordered developmentally appropriate parenting classes and NAMI support group for the parents.

## DISCUSSION

### 1. *Jurisdictional Findings*

Both mother and father challenge the juvenile court's jurisdictional findings. "'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] '"[T]he [appellate] court must review the whole record in the light most

6

favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].'" [Citation.]" [Citation.]'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

DCFS alleged and the court found that the parents placed the children at a substantial risk of physical harm and danger due to Sergio's assault on mother, his mental health issues, substance abuse and past criminal history. To establish a substantial risk of physical harm, "'[t]here must be some reason to believe the acts may continue in the future.'" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) Section 300 "does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction." (*In re I.J., supra*, 56 Cal.4th at p. 773.) The question is whether the "circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M., supra*, at p. 824.)

Mother and father argue they did not fail to adequately protect the children because they did not allow Sergio to return home. Although Sergio was not living in the family home at the time of the hearing, both mother and father repeatedly expressed their desire to have Sergio return home. Mother wanted to take care of Sergio and father requested instructions from the court regarding Sergio's return home. When mother was told by the social worker of the dangers to the children in permitting Sergio to return, mother dismissed the warning. Neither parent acknowledged or understood the gravity of Sergio's assaultive behaviors,[5] which may be considered in evaluating the risk of harm to the children. (*In re John M.* (2013) 217 Cal.App.4th 410, 418-419 [identifying "the parent's current understanding of and attitude toward the . . . conduct that endangered the child" as "present circumstances" to consider].) The juvenile court could infer Sergio may return home and that possibility rendered Sergio's "past violent behavior toward

---

[5] Both parents repeatedly asserted that Sergio was "falsely accused of raping a minor." In addition, when told by the social worker the extension of Sergio's psychiatric hold from 72 hours to 14 days indicated Sergio's condition was "severe," mother continued to dismiss Sergio's assault, claiming that Sergio was not violent in the past and that she does not believe he would assault her in the future.

[m]other . . . an ongoing concern." (*In re E.B.* (2010) 184 Cal.App.4th 568, 576.) Therefore, Sergio's "potential return and resumption of residence in the home . . . justifie[s] the determination that . . . the best interests of the child[ren] were served by making [them] ward[s] of the court." (*In re Melissa H.* (1974) 38 Cal.App.3d 173, 175.) In contrast to *In re J.N.* (2010) 181 Cal.App.4th 1010, 1026, here, there was a substantial risk the behavior leading to the petition would recur.

Furthermore, "'[d]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.'" (*In re E.B., supra*, 184 Cal.App.4th at p. 576.) Domestic violence can include abuse between an adult son and his mother. (Fam. Code, § 6211, subd. (b) [defining domestic violence as abuse perpetrated against a "cohabitant"].) Here, both mother and Sergio were regular members of the household at the time of the assault. Although mother argues the assault was an isolated incident, a single episode of endangering conduct may be considered in evaluating the children's risk of harm. (See *In re John M., supra*, 217 Cal.App.4th at p. 418.) Permitting such "violence in the same household where children are living *is* neglect; it is a failure to protect [children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.) In sum, there was sufficient evidence to support the dependency court's jurisdictional finding.

## 2. *Dispositional Order*

Father also challenges the dependency court's dispositional order requiring father to participate in a family maintenance program.[6] "'The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion. [Citation.]'" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 454.)

---

[6] Mother does not challenge the disposition order.

Father alleges the court exceeded its discretion by requiring him to attend parenting classes and NAMI support groups.  He argues the court made "an arbitrary, capricious, or patently absurd determination in making these orders" because there were no facts to suggest father lacked the requisite parenting skills.  We disagree.

"'"The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300."'  [Citation.]" (*In re Alexis E., supra*, 171 Cal.App.4th at p. 454.)  That is what the court did in this case.  In making its dispositional order, the court was concerned about the parents' continuing failure to understand the seriousness of Sergio's violent assault on mother and its effect on the two minor children.  Rather than removing the children from the family home, the court required father to attend developmentally appropriate parenting classes and NAMI support groups to help him protect his two minor children from harm by better understanding the nature and extent of Sergio's mental health issues.  Father demonstrates no abuse of discretion.

### DISPOSITION

The jurisdictional and dispositional orders are affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

9