Filed 2/23/15  In re Adam M. CA2/8

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re ADAM M., a Person Coming Under the Juvenile Court Law. | B257444 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>MARIO M.,<br><br>      Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK04877) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Marilyn Martinez, Commissioner.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Navid Nakhjavani, Deputy County Counsel, for Respondent.

_____

Mario M. (father) challenges the juvenile court's jurisdictional order finding his son Adam M. to be a person described by Welfare and Institutions Code section 300.[1] Father contends there was insufficient evidence that Adam M. was at substantial risk of harm at the time of the jurisdiction hearing. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Daisy M. (mother) and father met around 2011. Adam M. was born in 2012. The parents never lived together or married.[2] In December 2013, while mother and Adam were at father's apartment, the parents got into an argument. Father pushed mother, slapped her, then grabbed a knife and held it to mother's neck, causing a thin, two-inch laceration. In late April 2014, father arrived at mother's home to retrieve some of his belongings. When mother tried to pass father's iPod to him through a partially-opened door, father forced his way into the home. He tried to grab mother's cell phone. When mother resisted, father bit mother's hand until it bled. As they struggled, mother tripped and fell to the floor; father put his foot on mother's left cheek. Adam was in the room. As father used his shod foot to push mother's head to the floor, Adam began to cry. Father took mother's phone and fled.

Police arrested father. In early May 2014, mother secured a temporary restraining order against him. In connection with the restraining order, mother received temporary sole legal and physical custody of Adam. The court ordered that father have no visitation.

In an interview for the jurisdiction and disposition report, father reported he was in custody for "strong arm robbery" arising out of the April incident with mother. He indicated he would enter a plea in exchange for a nine-year prison term. He also admitted to ongoing methamphetamine use. However, he denied the April incident in its

---

[1]    All further section references are to the Welfare and Institutions code.

[2]    Mother told DCFS she got pregnant "right away" after meeting father, and she "made the mistake of not getting to know him."

entirety, stating: "That never happened. [Mother] is making everything up. I was never even at her house that day."

The DCFS petition alleged jurisdiction was warranted under section 300, subdivisions (a) and (b) because the parents had a history of engaging in violent altercations in Adam's presence, and father's violent conduct against mother placed Adam at risk of physical harm and danger. The petition further alleged jurisdiction was warranted under section 300, subdivision (b) as father had a history of illegal drug use and was a current user of methamphetamines; he had on occasion been under the influence of illegal drugs while caring for and supervising Adam; his drug use endangered Adam; and mother knew of father's illicit drug use and failed to protect Adam. At the jurisdiction hearing, father requested that the allegations regarding domestic violence be dismissed. As to the drug use allegation, father's counsel stated: "My client is submitting that allegation to the court. He does admit that he has been using methamphetamine and that he needs help . . . ." Mother requested that the court sustain the petition after modifying it to indicate father had a history of perpetrating violence against her, and to eliminate the allegation that she failed to protect Adam from father's substance abuse.

The juvenile court sustained the petition, with amended allegations making clear that father had a history of perpetrating violence against mother and his conduct put Adam at risk of harm. The sustained petition did not assert mother failed to protect Adam. The court found Adam was a person described by section 300, subdivisions (a) and (b).

At the disposition hearing, father requested reunification services and asked the court to deny DCFS's and mother's request for a restraining order. Father contended he would be in custody for nine years, "with serving 80 percent time," thus there was no need for a restraining order. Father also requested visitation. The juvenile court found removal from father's custody was necessary to protect Adam. The court ordered that Adam was to remain in mother's custody, explaining: "The evidence supports that

3

[mother] can take good care of her son; that he is not at risk in her custody. And I order that jurisdiction be terminated." The court awarded mother full legal and physical custody and issued a three-year restraining order against father. The court ordered no visitation for father.

## DISCUSSION

### I.      Substantial Evidence Supported the Juvenile Court's Jurisdictional Order

On appeal, father contends there was insufficient evidence to support the court's order finding Adam to be a person described by section 300, subdivisions (a) and (b). Specifically, father contends: a) there was insufficient evidence of current risk of harm to Adam, in light of father's incarceration and the evidence that mother was able to adequately care for Adam; and b) the juvenile court's disposition order immediately terminating jurisdiction was "incontrovertible proof" there was no current or future risk of harm to Adam necessitating dependency jurisdiction. We disagree.

"We affirm a juvenile court's jurisdictional and dispositional findings if they are supported by substantial evidence. [Citation.] 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' [Citation.]" (*In re A.J.* (2011) 197 Cal.App.4th 1095, 1103.)

Under section 300, subdivision (a), a child is within the jurisdiction of the juvenile court if, "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm."

4

The court may find a child is described under section 300, subdivision (b), when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

"The three elements for jurisdiction under section 300, subdivision (b) are: ' "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the [child], or a 'substantial risk' of such harm or illness." ' [Citations.]" (*In re B.T.* (2011) 193 Cal.App.4th 685, 692.)

On appeal, father contends there was no evidence Adam was at risk of serious physical harm or illness because father was "no longer a threat." Father points to evidence that he was in custody, there was a temporary restraining order issued against him, mother had secured sole legal and physical custody of Adam, and he "had pled to a nine year sentence and would be serving at least five years in prison." However, father's summary of the evidence is not entirely accurate. Father was in custody at the time of the jurisdiction hearing. But the record did not indicate that father had already pled guilty or no contest, or that he had been sentenced to a prison term. Instead, the record contained only father's statements regarding the charges against him, and his *intention* to enter into a plea bargain that would result in a nine-year prison term, of which he did not intend to serve the full amount. In addition, mother did not have a permanent restraining order against father, or a permanent custody order. The evidence in the record established only that she had secured temporary restraining and custody orders set to expire 21 days after they were issued.[3]

---

[3]    The orders were to expire at a hearing scheduled for May 22, 2014. The record does not indicate whether the hearing took place as scheduled.

Thus, contrary to father's argument on appeal, it was not clear he was "no longer a threat." As things stood at the time of the jurisdiction hearing, father was in custody on criminal charges, but he had not yet entered a plea. There was no evidence father would definitely be in prison for any particular length of time.[4] (*In re Carlos T.* (2009) 174 Cal.App.4th 795, 806 [rejecting argument that there was no substantial risk of sexual abuse because father was incarcerated at the time of the jurisdiction hearing; father had not yet been sentenced on sexual molestation convictions and still had the right to appeal; father failed to acknowledge the abuse].)

Mother had only a temporary restraining order and temporary custody orders giving her sole legal and physical custody. And, although father and mother were not living together in April, and mother appeared to be attempting to limit her contact with him, father had physically overpowered her, forced his way into the home, bit her hard enough to draw blood, and stepped on her face, all in front of Adam and other witnesses. (See *In re John M.* (2013) 217 Cal.App.4th 410, 419 [rejecting incarcerated father's challenge to jurisdiction order; parents' history of domestic violence evidenced ongoing pattern that had not yet caused harm to child but posed real risk to child's physical and emotional health; risk not reduced by the fact that the mother had disappeared or that the incident was isolated and in the past].)

Father either denied the incident happened, or suggested it was the result of his methamphetamine use, which he admitted was an ongoing problem. The trial court could reasonably conclude that if father was released or avoided significant prison time, there was a substantial likelihood that he would continue using illegal drugs, and would engage in other acts of violence against mother, both of which would again put Adam at risk. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [substantial risk of harm based on past acts may be established when there is a reason to believe the acts may continue in the

---

[4] The jurisdiction and disposition report indicated: "Father states he does use methamphetamine and he will be taking a plea bargain which may result in his incarceration for up to 9 years."

future].)  Given the uncertain state of father's future, the trial court could reasonably conclude Adam remained at substantial risk of serious physical harm due to father's conduct.

Father's reliance on *In re J.N.* (2010) 181 Cal.App.4th 1010 (*J.N.*), for a contrary result is misplaced.  In *J.N.*, the appellate court concluded there was insufficient evidence to support a jurisdictional finding under section 300, subdivision (b).  The court concluded the jurisdictional finding was based on a single incident of "endangering conduct," and there was no evidence of a risk such conduct was likely to recur.  (*Id.* at pp. 1025-1026.)  Although the parents had endangered their children by driving while intoxicated, there was no evidence that they had any ongoing substance abuse problems.  Moreover, the parents were remorseful and otherwise fit parents.  (*Id.* at p. 1026.)  In marked contrast,  father in this case had an admitted substance abuse problem.  He had twice engaged in extremely aggressive acts of domestic violence against mother while in Adam's presence.  Instead of expressing remorse, he denied any wrongdoing.  Indeed, father's only argument on appeal is that he would be prevented from engaging in further domestic violence because he expected to be incarcerated.  However, as explained above, the uncertainty of his incarceration was enough reason for the juvenile court to conclude Adam was still at risk of harm from his conduct, even though mother was a fit parent.

This case is more similar to *In re R.C.* (2012) 210 Cal.App.4th 930, which also involved a father's domestic violence against the mother.  Although the father denied domestic violence, there was evidence he had engaged in at least two violent incidents against the mother, once in the presence of one of the children.  There was also evidence the father threatened to kill the mother.  Yet, on appeal the father asserted there was insufficient evidence to support a jurisdiction order because the children had not been harmed during the two incidents, and there was no ongoing abuse because he was complying with a three-year restraining order against him.  (*Id*. at pp. 932, 942-944.)

The appellate court rejected the father's arguments and disagreed that the reasoning of *J.N.* applied. The court noted it is well established that exposure to domestic violence may serve as the basis for a jurisdictional finding under section 300, subdivision (b). (*In re R.C., supra,* at pp. 941-942.) The court further explained that the father's violent behavior involved "materially more aggravated facts" than in *J.N.* (*Id.* at p. 944.) The case involved two separate acts of domestic violence, repeated threats to kill the mother, domestic violence in the presence of one of the children, father's threat to take the children out of the country, and one of the children expressing fear of the father. The court also indicated there was substantial evidence "the parents' separation did not diminish the risk to the three children (as well as to the mother)." (*Ibid.*)

Likewise, in this case, father's repeated acts of domestic violence against mother, the extremely serious nature of those acts, his denial of the domestic violence, his admitted substance abuse problem, and his total lack of rehabilitation distinguish this case from *J.N.* And, as explained above, we reject the argument that father's potential incarceration eliminated or diminished the risk to Adam.

We further disagree that the juvenile court's order at the disposition hearing terminating dependency court jurisdiction was proof that jurisdiction was unnecessary or unsupported by the evidence. By asserting dependency jurisdiction over Adam, the court was empowered to award mother permanent sole legal and physical custody of Adam, to remove Adam from father's custody, to issue a long-term restraining order, and to order that father was to have no visitation with Adam. With the issuance of these orders, the dependency court could minimize or eliminate the danger father posed to Adam, such that termination of dependency jurisdiction was appropriate. (*In re Chantal S.* (1996) 13 Cal.4th 196, 204.) The termination of jurisdiction at the disposition hearing did not establish that the initial assertion of dependency jurisdiction was unnecessary or unsupported by the evidence.

8

**DISPOSITION**

The jurisdiction order is affirmed.


BIGELOW, P.J.

We concur:


RUBIN, J.


FLIER, J.