Filed 5/15/15  In re S.C. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re S.C., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>Q.O.,<br><br>     Defendant and Appellant. | A142887<br><br>(Alameda County<br>Super. Ct. No. SJ14022190) |

Appellant Q.O. (Mother), the mother of the dependent child S.C., appeals from the juvenile court's jurisdictional and dispositional orders sustaining a Welfare and Institutions Code section 300 petition under subdivision (b),[1] declaring S.C. a dependent of the court, and ordering formal family maintenance services for Mother.  She contends the jurisdictional findings are not supported by substantial evidence and that, even if they are, the court abused its discretion by not ordering informal services for the family.  We affirm.

---

[1] All further statutory references are to the Welfare and Institutions Code.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*I.      Background and Commencement of Proceedings*

On January 2, 2014, the Alameda County Social Services Agency (Agency) filed a dependency petition alleging that five-year-old S.C. came within section 300, subdivision (b).[2]  The petition alleged that on December 29, 2013, Mother left the child with his 17-year-old sibling and did not return for a day and a half.  During this time, she did not answer her phone or return any calls made by the minors or the police.  Mother reportedly stated that she "wanted to teach her children a lesson on how to appreciate her."  The petition also alleged that S.C., Sr. (Father) had an outstanding felony warrant for domestic violence against Mother.[3]  He had created a detrimental home environment by engaging in acts of domestic violence, placing S.C. at risk of physical and/or emotional harm.

At the time of his removal on December 31, 2013, S.C. lived with Mother.  S.C. was placed in foster care.

On January 3, 2014, the Agency filed a detention report.  According to the report, when Mother left the home and could not be reached, her 17-year-old daughter contacted the police and filed a missing persons report.  Mother later told the police she left "in an attempt to get [her children] to appreciate her."  She also stated that she had placed her children in the care of her ex-husband.  When contacted by law enforcement, her ex-husband said he had no understanding that he was to care for the children.  S.C. was placed in protective custody and Mother was subsequently arrested on charges of child abandonment.

On January 3, 2014, the juvenile court ordered S.C. detained.

---

[2] Section 300, subdivision (b)(1), provides that a child may be declared a dependent of the court if he or she "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

[3] An amended petition was filed on February 26, 2014, adding an allegation under section 300, subdivision (g) that father was incarcerated and unable to provide care for the child.

On January 22, 2014, the Agency filed a jurisdiction/disposition report. The report indicated that S.C. had been returned to Mother's home on January 10. The Agency recommended the petition be sustained and that Mother be ordered to participate in family maintenance services. Mother was reportedly in agreement with this recommendation. At this time, Father was in custody on the outstanding warrant.

Mother's ex-husband, the father of her 17-year-old-daughter, reported he was at Mother's home the day that she left. He did not have a clear understanding that he was supposed to stay at the home to help care for the children, but he stayed until Mother returned. He denied the minors were ever in danger and explained the only reason the police were contacted was because of concern about Mother, rather than concern about the minors having no supervision. When interviewed, Mother said she asked her ex-husband to watch the children "because she needed some time alone." She did not return her daughter's texts "because she thought her daughter was being dramatic about saying she was calling the police." Mother stated that she took S.C. from Father, with whom he had been living, in November 2013, because she did not want the child to be exposed to violence and/or drugs. She indicated there was a history of domestic violence within the relationship and said she was now pursuing full legal custody of S.C. Father reported Mother had a history of leaving S.C. in the care of her daughter. He had also filed for emergency custody. He denied committing acts of domestic violence and claimed Mother had a history of making false accusations.

Mother's daughter reported that after her mother left the house she was not alone with her brother for very long because her father "was always around." She said she contacted the police because she was worried about her mother, as she could tell someone had been reading her sent text messages. Normally, her mother was always reachable by phone when she was away.

The Agency concluded that, while the exact circumstances surrounding Mother's disappearance were disputed, she had demonstrated a lack of healthy coping skills and had made a series of poor choices, causing her children and other loved ones to worry about her well-being. Further information supported an assessment that her employment

3

of poor coping skills was not an isolated incident. Formal in-home services would thus be beneficial to the entire family.

On February 26, 2014, the Agency filed an addendum report, indicating S.C. was doing well in Mother's care and that she was actively engaged in individual counseling sessions. Mother acknowledged she had experienced difficulty coping with parenting and other life stressors.

## II.    *Contested Jurisdiction/Disposition Hearing*

A contested jurisdictional and dispositional hearing began on February 26, 2014. Mother's ex-husband testified that he lives in Southern California and visits Mother's home every two weeks or so to help out as much as he can. On December 29, 2013, he was staying at Mother's house to help the family clean up and organize their possessions after a recent household move. Mother left the house around 6:00 p.m. after the two of them had an argument. On her way out she said, "You take care of the children." He responded, angrily, "Okay." He stayed at the house, spending the night in the home's converted garage. The following night, he left the home at around 9:00 p.m. to pick up a car. The children remained in the home by themselves. His daughter called him and told him the police had been notified about Mother's disappearance. He returned to the home around 11:00 p.m. When he arrived, the police were already there. They released his daughter to his care. They did not release S.C. to him because he was not the boy's biological father.

Mother's daughter testified that Mother left the house between 5:30 p.m. and 6:00 p.m. on December 29, 2013, saying that she was worried about her boyfriend and wanted to check on him. She returned home on December 31 at 5:00 a.m.

After Mother left the house, she did not respond to any of her daughter's text messages. The daughter and S.C. were at home with her father until the following evening, when her father left the house at around 7:30 p.m. or 8:00 p.m. to take BART to pick up a car. While he was on BART, they kept in contact through text messages. Two police officers came to her home around 9:00 p.m. Mother's boyfriend arrived about 15

4

minutes later. The police came again early the next morning after her mother had returned. They removed S.C. from the home.

Mother's daughter also testified that S.C. had seen police officers in his home in the past when Mother and Father had been fighting. At times, he had witnessed them arguing while he was being held by one of his parents. Mother's daughter also witnessed Mother and Father engaging in physical fights. The fights occurred about a month before Father was forced to leave the house.

### III.    *Post-Hearing Orders*

On June 5, 2014, the Agency filed another addendum report. The social worker had visited Mother and S.C. in their home and the child appeared to be doing well. Her daughter was going to be leaving for college soon, which would be an adjustment for the family. Mother reported that S.C.'s school had expelled him from its kindergarten program due to his hitting other children. Both Mother and her son were actively engaging in counseling. Father had been found guilty of felony domestic violence and was sentenced to a year in jail. Mother was awaiting her trial on child endangerment.

On June 27, 2014, the juvenile court found true the allegation that Mother had placed S.C. at risk of harm by her unexplained absence, leaving the boy with his sister for a substantial period of time with no way to contact her. The court also found the allegations of domestic violence to be true. The court found S.C. was a child described by section 300, subdivision (b), and ordered the Agency to provide family maintenance services to Mother. This appeal followed.

### DISCUSSION

"A jurisdictional finding under section 300, subdivision (b) requires '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.] 'Subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the

child is exposed to a *substantial* risk of *serious physical* harm or illness.' [Citations.]" (*In re John M.* (2013) 217 Cal.App.4th 410, 418.)[4]

The juvenile court's findings at a jurisdiction or disposition hearing are reviewed for substantial evidence. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*Ibid.*) "We do not reweigh the evidence or exercise independent judgment . . . . ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)

Viewing the evidence under this standard, we find there is substantial evidence to support jurisdiction. Contrary to Mother's implicit argument, this is not a case where there was merely a single incident of neglect. While the petition's allegations as to Mother did not specifically reference domestic violence, her daughter's testimony indicated that S.C. had witnessed his parents' arguments in the past. That the child was returned to Mother's care after 10 days, once the Agency determined he was not at immediate risk of serious harm, does not support the contention that there was no evidence of actual harm to the child or any demonstrable risk of the possibility of future harm. Mother's disappearance was preceded by a history of domestic violence that she admittedly had found stressful. It further appears that while the child might not have witnessed physical violence between his parents, he appeared to be suffering from the

---

[4] The Agency contends Mother's appeal must be dismissed as there is no justiciable controversy over the juvenile court's jurisdiction over S.C., because uncontested jurisdictional findings as to domestic violence sustained against Father were sufficient to give the court jurisdiction. We exercise our discretion to consider Mother's jurisdiction challenge. (See *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.)

effects of stresses in the home, as evidenced by his expulsion from school for his hitting other children.

Additionally, as the juvenile court noted, Mother did not provide a satisfactory explanation as to why she chose to absent herself from the home while cutting off communication with her family members. Further, the evidence showed there was no actual plan in place to care for the children. While her ex-husband was present in the home when she left, he had not agreed to remain there indefinitely and she did not indicate when she would return. Even if she believed her ex-husband would care for her children in her absence, her refusal to respond to her daughter's text messages and alleviate the family's reasonable concern for her well-being evidences a level of irresponsibility that could be detrimental to a young child's well-being.

Mother argues there was no evidence S.C. was at substantial risk of physical harm as the result of her having left the home. That the child did not suffer any harm during her disappearance was entirely due to the intervention of her daughter and her ex-husband, and not to any conduct on her part. There thus existed a potential for serious harm to the child. Additionally, given that her daughter was soon to leave home for college, the juvenile court was justified in concluding family services were necessary to assist Mother in developing appropriate coping strategies and avoiding future disappearances. For this reason, we conclude that the court's refusal to order informal supervision was not an abuse of discretion. Once jurisdiction has been found, the court "has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) In light of the evidence summarized above, we find no abuse of discretion here.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

7

_____
DONDERO, J.


We concur:


_____
HUMES, P.J.


_____
BANKE, J.