Filed 5/22/14  In re Baby Boy S. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re BABY BOY S., a Person Coming Under the Juvenile Court Law. | B250552 |
| | (Los Angeles County Super. Ct. No. CK99393) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. D.C., SR., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Affirmed.

David A. Hamilton, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

D.C., Sr. (father) appeals a May 29, 2013 dispositional order that (1) removed father's newborn son, D.C., Jr. (D.C.),[1] from the child's mother, and (2) declined to place D.C. with father, finding that such placement would be detrimental to D.C.'s physical or emotional well-being. (Welf. & Inst. Code, §§ 300, subd. (b), 361.2, subd. (a).)[2] We find no abuse of discretion, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

D.C. (born May 2013) is the child of Monica S. (mother) and father. Mother has two other children by different fathers: Jacoby W. (born Jan. 2003) and Armando B. (born May 2006).

D.C. was born at home and tested positive for amphetamine and methamphetamine the day after his birth. D.C., Jacoby, and Armando were detained and placed in foster care on May 3, 2013.

## I.     Petition

On May 8, 2013, the Department of Children and Family Services (DCFS) filed a juvenile dependency petition alleging jurisdiction pursuant to section 300, subdivision (b), on the grounds that: both mother and D.C. tested positive for amphetamine and methamphetamine at the time of D.C.'s birth and "[s]uch condition would not exist except as the result of unreasonable acts by the child's mother" (b-1); and mother had a history of substance abuse, including marijuana and alcohol, and was a current user of amphetamine and methamphetamine, which rendered her unable to provide regular care

---

[1]     The juvenile dependency petition listed the child as "Baby Boy [S.]" The first amended petition, filed May 29, 2013, shows "Baby Boy [S.]" stricken and "[D.C.]" inserted in its place.

[2]     All further statutory references are to the Welfare and Institutions Code.

of the children, created a detrimental home environment, and placed the children at risk of physical harm and damage (b-2).

## II.   Detention Report and Hearing

Mother reported that about two weeks before D.C.'s birth, she fought with her boyfriend and "decided to grab a cigarette and dip it in Meth and smoked it." She claimed she had not otherwise used drugs during her pregnancy. Mother said she had smoked marijuana when she was younger, but denied use of any other illegal substances. She said Armando and Jacoby were living with their fathers, for whom she did not have contact information.

Father reported that he and mother were romantically involved from 2010 to September 2011. He said he tried to stay in touch with mother to check up on her pregnancy "but she was on the go." He claimed not to have known mother was using drugs. Father admitted serving two years in prison (2008-2010) for narcotics sales, but claimed that was the only offense on his record. Father recently had been shot six times, had had six surgeries, and was scheduled for an additional surgery in May. He was confined to a wheelchair and said he used marijuana when in pain. He reported living with his girlfriend in a single apartment. He denied any gang affiliation.

DCFS's records indicated one prior referral for the family. In October 2011, mother reported that during an argument, father grabbed her by the neck and threw her to the ground in the presence of Armando and Jacoby. An allegation of emotional abuse was found to be "inconclusive" because DCFS could not locate the family.

Attached to the detention report was a statement regarding parentage of D.C., in which father asserted that he believed he was D.C.'s father but requested a paternity test.

At the May 8, 2013 detention hearing, the juvenile court found father to be D.C.'s presumed father. It further found a prima facie case for detaining D.C. and finding him to be a person described by section 300, subdivision (b).

3

### III.    Jurisdiction/Disposition Report and Hearing

The May 29, 2013 jurisdiction/disposition report and attachments indicated that a deferred judgment was entered against father in February 2008 after he was arrested for possession of cocaine for sale.  In October 2008, father was again arrested for possession of cocaine for sale and was convicted and sentenced to a three-year prison term.  Father was arrested for spousal battery in November 2011 and September 2012, but he was not detained or convicted in connection with these arrests.

DCFS said that it could not ensure D.C.'s safety in father's home because father "has a criminal arrest history for possession of cocaine for sale" and "[m]other and father . . . also have a DCFS referral history for domestic violence."  While father "appeared appropriate and there were no apparent safety concerns" at the time of the interview, DCFS expressed concern about father's criminal conviction and recommended that D.C. not be released to father until the conviction was further investigated.  DCFS urged the court to declare D.C. a juvenile court dependent, order family reunification services for mother and father, grant mother and father monitored visitation, and order father to complete six random drug tests.

At the May 29, 2013 hearing, the parties agreed to dismiss paragraph b-2 of the petition, and mother pleaded no contest to paragraph b-1, as amended.  The court sustained the allegations of paragraph b-1 and found D.C. a dependent of the court.

The social worker testified at the hearing that before recommending that D.C. be placed with father, she wanted to assess father's home, interview his fiancée, speak to father's physician about the effects of his marijuana use, and determine what kind of family support he had "because the demands of caring for an infant, you know, a lot goes into that, and considering his pain, his medical marijuana use, his confinement to the wheelchair, I would just want to be able to ensure that there is enough support for him to care for the baby in the home.  I don't know what [the fiancée's] work schedule is, if she's there during the day or who would be in the caregiver's home."

Father testified that he currently took Norco, an opioid pain medication, two or three times per day and smoked medical marijuana two or three times per day.  He

believed he could safely care for D.C. in his home and said he would have help from his girlfriend, mother, sisters, aunt, and grandmother. The maternal grandmother testified that she was not currently employed and she and her daughters would be able to help care for D.C.

Father's attorney made a motion under section 350, subdivision (c), asserting that DCFS had not proven by clear and convincing evidence that removal was the only way to protect D.C.[3] When the court indicated it would not grant the motion, counsel sought a continuance until DCFS could conduct a home study of father's home. The court denied the continuance, telling counsel that father "needs to be [drug] tested before the court can seriously consider placing the child [with father]."

County counsel said he believed it premature to place D.C. with father without further investigation, and while "I do think it's likely that the children may be placed soon," he asked that DCFS have discretion to place D.C. once its investigation was complete.

With regard to disposition, the court found by clear and convincing evidence that there would be substantial danger to D.C.'s physical health, safety, protection, or physical or emotional well-being if returned home and there were no reasonable means by which D.C.'s physical health could be protected without removing him from mother's custody. The court further declined to place D.C. with father, finding as follows: "The court does find that the evidence is sufficient to find that it would be detrimental to the child to be released to [father]. I note, first of all, that [father] admits to a significant amount of drug

---

[3] Section 350, subdivision (c) says: "At any hearing in which the probation department bears the burden of proof, after the presentation of evidence on behalf of the probation department and the minor has been closed, the court, on motion of the minor, parent, or guardian, or on its own motion, shall order whatever action the law requires of it if the court, upon weighing all of the evidence then before it, finds that the burden of proof has not been met. That action includes, but is not limited to, the dismissal of the petition and release of the minor at a jurisdictional hearing, the return of the minor at an out-of-home review held prior to the permanency planning hearing, or the termination of jurisdiction at an in-home review. If the motion is not granted, the parent or guardian may offer evidence without first having reserved that right."

usage on a regular and daily basis.  And that certainly raises a concern.  I know, of course, that he is not an offending parent.  Nevertheless, the court still has an obligation to ensure the welfare of the child to be placed in a . . . reasonably risk-free environment, and the court finds that at this time, given the information, that the risk to the child, who is at this point still less than a month old, is . . . substantial[.]"

The court granted father monitored visitation and ordered father to drug test, explaining, "I want to see his drug levels, and this is the concern the court has.  The court has made a finding that his drug usage is substantial, even though it may be within the law.  It's significant.  It's opiates and it's marijuana, both [of] which are highly intoxicating substances.  And in this case, he's using a combination, and it appears he's intoxicated, probably at least half or most of the day, and this is the risk that's posed to an infant child.  So I'm going to order six random [tests].  He's going to come back positive.  I don't think there's any question about that.  I'm more concerned about his levels than whether or not he's using . . . but I expect it to be very substantial."  The court ordered the parties back in a week to "take it from there."

## DISCUSSION

### I. The Juvenile Court Did Not Abuse Its Discretion by Declining to Place D.C. With Father

Section 361.2, subdivision (a) provides:  "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child.  If that parent requests custody, the court shall place the child with the parent *unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child*."  (Italics added.)

The juvenile court must make the detriment finding by clear and convincing evidence.  (*In re John M*. (2006) 141 Cal.App.4th 1564, 1569-1570; *In re Luke M*. (2003)

6

107 Cal.App.4th 1412, 1426; *In re Isayah C*. (2004) 118 Cal.App.4th 684, 700.) "'We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the [child] would suffer such detriment. [Citations.] Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt. [Citation.]' [Citation.]" (*In re John M*., *supra*, 141 Cal.App.4th at pp. 1569-1570.)

"In assigning custody of the child to either parent, 'the court's focus and primary consideration must always be the best interests of the child.' (*In re Nicholas H*. (2003) 112 Cal.App.4th 251, 268.) If the dependency court finds that placement with the noncustodial parent would be detrimental, the court proceeds as to that parent as if it were removing the child from the custodial, offending parent. The court may provide reunification services under section 361.5, or no services if services are not warranted. [Citations.]" (*In re John M*. (2013) 217 Cal.App.4th 410, 421.)

Father contends that at the time of the disposition hearing there was not clear and convincing evidence that placing D.C. with father would be ""'detrimental to [D.C.'s] safety, protection, or physical or emotional well-being.'"" We do not agree. As the trial court noted, father had twice been convicted of possession of narcotics for sale, had served a two-year prison sentence, and had twice been arrested for domestic violence. Father was still recovering from gunshot wounds, was in chronic pain, and was scheduled for additional surgery. To manage the pain associated with his gunshot wounds, father was using a prescription narcotic and smoking medical marijuana two to three times daily. Although father appeared to be using the narcotic and marijuana under a doctor's supervision, the court did not abuse its discretion by concluding that father could not safely care for a one-month-old child while under the influence of these drugs, in significant pain, and recovering from gunshot wounds.

Father contends that at the time of the disposition hearing, DCFS was not prepared to make a recommendation with regard to D.C.'s placement with father. Again, we do not agree. Although the children's social worker indicated at the hearing that she wished

7

to do additional investigation, DCFS clearly advised the court that it could not "ensure the safety of [D.C.]" in his father's home and did "not recommend that [D.C.] be released to the care of [his father]."

Finally, citing *In re Alexis E.* (2009) 171 Cal.App.4th 438, 453, father contends that a parent's use of medical marijuana, without more, does not bring a child within the jurisdiction of the juvenile court.[4] While we have no quarrel with this statement of the law, it does not apply here. As we have noted, the trial court was concerned not only with father's marijuana use—it also noted that father had been convicted and sentenced for drug possession, was using marijuana in conjunction with opiates, had a history of reports of domestic violence, and was recovering from multiple gunshot wounds that would require additional surgery. On this record, the juvenile court did not err in identifying father's marijuana use as one factor supporting its conclusion that placing D.C. with father would likely be detrimental to D.C.'s health and safety.

## II.     The Trial Court Did Not Abuse Its Discretion by Denying Father's Request for a Continuance

Continuance of juvenile court hearings are governed by section 352, which provides in relevant part that upon request, the juvenile court may continue a hearing beyond the time limit within which the hearing is otherwise required to be held, "provided that no continuance shall be granted that is contrary to the interest of the minor." (§ 352, subd. (a).) In considering the minor's interests, the court shall give

---

[4]     Father cites several other cases for the proposition that drug or alcohol use, standing alone, does not support jurisdiction. The cases are distinguishable. (*In re B.T.* (2011) 193 Cal.App.4th 685, 694 [mother's beer consumption did not support exercise of jurisdiction over child where there was no evidence mother neglected her children and mother tested clean 11 times at frequent intervals, "an unlikely feat for someone in the grip of a serious addiction"]; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1001-1004 [mother's drug use did not support juvenile court's exercise of jurisdiction where 11-year-old Destiny was a "healthy, happy preteen" and mother submitted five negative drug tests during the relevant period].)

"substantial weight" to "a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." Continuances shall be granted "only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a).) We review the denial of a continuance for abuse of discretion—i.e., for a decision that is arbitrary, capricious, or patently absurd and results in a manifest miscarriage of justice. (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604-605; *In re Karla C.* (2003) 113 Cal.App.4th 166, 179-180.)

Father urges that it was an abuse of discretion to refuse to continue the hearing to allow DCFS to further investigate placing D.C. with father. We do not agree. Continuances are discouraged in dependency cases so that children may receive loving and secure home environments as soon as reasonably possible. (*In re Giovanni F.*, *supra*, 184 Cal.App.4th at p. 604; *In re James F.* (2008) 42 Cal.4th 901, 918.) The need to expeditiously resolve dependency cases is especially great in the case of very young children like D.C., who at the time of the hearing was less than a month old. (See *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 847, fn. 4 [courts "have long recognized that providing children expeditious resolutions is a core concern of the entire dependency scheme. [Citations.] If this is true of dependency cases in general, it is doubly true for the very young."].)

A disposition hearing must be conducted within 60 days of the detention hearing unless the court finds that there are exceptional circumstances requiring such a continuance. (§ 352, subd. (b).) In the present case, the juvenile court determined that D.C. could not be placed with father until he completed six random drug tests so the court could determine (1) the extent of father's prescription marijuana and opiate use, and (2) whether father was using any other legal or illegal substances. There was no showing that these tests could be completed within 60 days of the detention hearing, i.e., by about July 8, 2013. (See *In re Karla C.*, *supra*, 113 Cal.App.4th at pp. 179-180 [no abuse of discretion in denying father's request for a continuance of disposition hearing pending

9

receipt of paternity test results, because results would not be available for several weeks, well past the 60-day limit of section 352, subdivision (b)].)[5]

Further, the juvenile court made clear that its decision not to place D.C. with father would be revisited when the results of father's drug tests were available and DCFS had had the opportunity to assess father's home, speak to father's physician, and determine the extent of father's family support. If additional investigation allowed the court to conclude at a future hearing that it was in D.C.'s best interest to be placed with father, nothing prevented the court from so ordering at that time. The court thus did not abuse its discretion in denying father's request for a continuance.

---

[5] The cases cited by father are not analogous and do not guide our determination. In *In re John M.*, *supra*, 141 Cal.App.4th at page 1570, the juvenile court based a finding of detriment on "John's wishes, his need for services, his relationship with [his half-sister] and members of his extended family in San Diego, his lack of a relationship with [father], the paucity of information about [father], and [mother's] reunification plan." The Court of Appeal found these factors did not support a finding of detriment and, therefore, the juvenile court should have granted a continuance to allow child protective services to investigate whether the 13-year-old John could safely be placed with his father. In the present case, in contrast, the evidence did support the court's finding of detriment, and thus a continuance was not necessary.

## DISPOSITION

The May 29, 2013 dispositional orders and findings are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, J.[*]

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11