Filed 5/11/16  In re Anthony R. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| In re ANTHONY R., et al., Persons Coming Under the Juvenile Court Law. | B266495 |
| | (Los Angeles County Super. Ct. No. DK09822) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent.<br><br>v.<br><br>MARCOS R.,<br><br>        Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Emma Castro, Commissioner.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Julie Roberson, Associate County Counsel for Plaintiff and Respondent.

Marcos R. (father) appeals from a juvenile court judgment asserting jurisdiction over father's three children pursuant Welfare & Institutions Code section 300 and removing the children from father's custody.[1]  Father argues that substantial evidence did not support the removal order, and that the removal order was erroneous under section 361, subdivision (c) because the children did not reside with him at the time the petition was filed.  We affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

The family consists of father, Brenda S. (mother),[2] Anthony R. (born Aug. 2009), Jordan R. (born Feb. 2012), and Madelyn R. (born Sept. 2013.)

**Referrals and investigation**

On February 4, 2015, DCFS received a referral alleging that mother and father both used methamphetamine and that father had recently been excluded from the family home due to drug-related activity.  In addition, father had been arrested for drug possession and sales and was released on February 1, 2015.  The anonymous caller was concerned because mother was consuming drugs and had lost a significant amount of weight.  She had used her public assistance benefits to post bail for father rather than for the children, leaving them limited food by the end of the month.

On February 6, 2015, a DCFS social worker met with mother in the family home. Mother denied drug use and the other allegations.  She admitted father used drugs and that she excluded him from the family home for failing to support the children.  Mother's room was messy and disorganized.  Also mother was sharing one bed with the children. Otherwise, the home was found to be orderly and clean.

On February 19, 2015, the social worker and a public health nurse visited the home and met with father and the children. Father was taking care of the children because mother had been hospitalized with stroke-like symptoms and numbing of her face.  Father admitted to a history of drug use and said he last used drugs one month

---

[1]    All further statutory references are to the Welfare & Institutions Code.

[2]    Mother is not a party to this appeal.

2

earlier. Father stated that mother used drugs in the past, but she stopped before the children were born. Father agreed to enter a treatment program and be tested for drugs on demand.

On February 20, 2015 DCFS received a referral alleging that mother tested positive for amphetamine and admitted using methamphetamine. On the same day the social worker met with mother, who again admitted using methamphetamine. Mother reported experiencing stress from various family problems as well as problems with father. She was worried that she would be homeless because family members were asking her to move out after forcing father to leave the home. Both parents expressed that they would do anything to keep their children and agreed to start drug treatments as soon as possible.

On February 20, 2015, the parents visited Tarzana Treatment Center and scheduled an appointment for February 23, 2015. On February 23, 2015, the parents returned to the treatment center and both tested positive for methamphetamine. On the same date, the parents informed the social worker that they were living at the Goldstar Inn Motel while looking for an apartment.

On February 26, 2015, the family met with a substance abuse counselor at a DCFS office. On that date, father tested positive for methamphetamines.

**Petition**

On March 3, 2015, DCFS planned to file a non-detained petition under section 300, subdivision (b), concerning parents' substance abuse. The parents were cooperative with DCFS and showed a willingness to participate in drug treatment programs. However, at the March 6, 2015 detention hearing, DCFS changed its recommendation. Instead, DCFS filed a last minute information for the court indicating that the social worker had consulted with the director of the Pacific Toxicology Lab who indicated that there was no way to determine the parents' ability to safely parent because the levels of methamphetamine in father's first positive result indicated a very high tolerance to methamphetamine.

In addition, DCFS reported that mother had a letter from El Projecto Del Barrio confirming that mother attended her first appointment at the out-patient drug treatment center on March 5, 2015.

DCFS's change in recommendation was due to concerns that the parents had not had more than one or two clean drug tests. In addition, the family was homeless and stable housing was not provided for the children. Detention from father and release to mother was considered, but there was concern that mother would not physically separate from father and that mother was financially dependent on father.

**Detention hearing**

At the March 6, 2015 detention hearing, mother and father were present and were each appointed counsel. Father filed a statement regarding parentage in which he asked the juvenile court to find him the presumed father of all three children because, inter alia, the children had lived with him from birth to present. Although the document was file stamped March 4, 2015, father signed the form on March 6, 2015.

The juvenile court found father to be the presumed father of all three children. The court detained the children from father, but over the objection of DCFS, released the children to mother on the conditions that (1) mother not test positive for any illegal substances; (2) mother cooperate with unannounced home visits; (3) mother participate in narcotics anonymous meetings once per week with a sign-in sheet; (4) mother actively participate in a drug treatment program; and (5) father not reside in the family home. The court ordered DCFS to provide the parents with referrals for drug treatment programs with random drug testing. The court also ordered monitored visits with the children for father, at least two times per week, with mother not to function as a monitor.

During the hearing, mother was asked why she had to leave the family home. Mother explained that father had been excluded from the family home in early February and had gone to live with a friend. Paternal step-grandfather did not like father coming to the home to help with the children, so paternal step-grandfather then told mother to leave the home too.

4

Father's counsel suggested that if the court were to detain the children from father only, that father was "willing to move out of the mother's home." Mother's counsel pointed out that DCFS was made aware that "the parents" were in residence at the Goldstar Inn. After the court ordered the children detained from father, the court informed father that he was "not to be at the home of the mother" for any reason. The court explained "if your things are in the motel room today, you are not to go tonight to pick up your things. Mother can make arrangements and have one of your relatives come and pick up your belongings and give them to you." The court then asked father where he would be staying that night, to which father responded that he would stay at a friend's house.

**Jurisdiction/disposition report and supplemental reports**

On April 20, 2015, DCFS filed a jurisdiction/disposition report with the juvenile court. A social worker had interviewed mother on April 1, 2015, during which mother admitted that she still did not have a stable residence and was staying with relatives who provided childcare while she worked. Mother said that she started using methamphetamines when she was 14 years old and used until she was 18 years old. She claimed that she had been sober since 2009 and that the one dirty drug test was a one-time relapse. She stated that the children were with paternal grandmother at the time she had the relapse. Mother had reenrolled in a drug program as of April 3, 2015, but was unable to attend regularly because of a new job.

Father was interviewed on the same date and admitted he started using methamphetamine when he was young. He acknowledged that there was a high volume of drugs in his system when he started testing in February 2015, but the levels started to go down because he was no longer using. Father explained that when the family was together "I used and then came home. I slept on the floor. The kids were in their bed. We shared one room together." As to mother, he was aware that she used drugs when she was young, but she stopped when Anthony was born. Father was unaware that mother had recently tested positive for methamphetamine.

Mother stated that father was not around the children when he tested positive for drugs in the middle of February 2015. The couple had not been living together since January 2015, when mother was permitted to stay at the paternal grandparents' home on the condition that father move out. However, they were still "around each other" until the last court date. Paternal grandmother said that the parents and children lived in her home until father moved out in January of 2015 and mother moved out in February of 2015. Father also claimed that although he had been living with the family since the children were born, the last time they lived together was the end of January or beginning of February of 2015, when they were living in paternal grandparents' home. Father had obtained employment as of March 30, 2015.

Father's criminal history revealed various arrests and convictions from 1995 through 2015 for offenses including possession of controlled substances, burglary, grand theft, and petty theft.

At a hearing on April 20, 2015, father informed the court that he was living from motel to motel, working, and attending parenting and drug programs. The matter was set for a contested hearing.

On June 3, 2015, DCFS filed a last minute information for the court wherein father's drug counselor reported that father had been discharged from his outpatient drug treatment program on April 21, 2015. Father had enrolled in the program on March 18, 2015, and had attended a few classes before he stopped attending the program. Father claimed he could not attend because he needed to work in order to provide for his children. Father had tested negative for illegal substances on April 9 and 23, 2015, and May 7 and 18, 2015.

Mother's drug counselor reported that mother was regularly participating in her drug treatment program, including attending substance abuse counseling, parenting classes, and 12-step meetings. She had tested drug free on April 3, 6, 7, and 28, 2015, as well as May 4 and May 6, 2015.

**Jurisdiction hearing**

At the June 3, 2015 jurisdiction hearing, the DCFS reports were entered into evidence. The parties proceeded to argument and DCFS requested that the petition be sustained as pled.[3] DCFS pointed out that father was not enrolled in a drug treatment program. Minors' counsel also asked the court to sustain the petition as pled.

Mother's counsel asked the court to dismiss the count concerning mother, pointing out that mother was in compliance with all services and had only a temporary lapse in judgment. Father's counsel also asked the court to dismiss the count as to father, arguing that DCFS had not proved that father had a substance abuse problem and emphasizing that father had appropriately cared for the children.

The court sustained the petition as pled. The court indicated that father had recently tested positive for methamphetamine and had been discharged from his outpatient drug rehabilitation program. The court also noted that the parents had not been forthcoming in providing accurate, reliable, or truthful information regarding their drug history. Due to court congestion the court was not able to finish the matter. The court set a disposition hearing for July 1, 2015.

**Postjurisdiction reports**

In a June 29, 2015 last minute information for the court, DCFS reported that mother tested negative for illegal substances on May 29 and June 5, 2015, and father also

---

[3] The petition contained two counts: count b-1, alleging that mother has a history of illicit drug use and is a current user of methamphetamine and amphetamine, which renders her incapable of taking care of the children; and b-2, which alleged: "The children Anthony R[.], Jordan R[.], and Madelyn R[.]'s father [Marcos] R. has a history of illicit drug use and is a current user of Methamphetamine and Amphetamine, which renders the father incapable of providing regular care for the children. On prior occasions, the father was under the influence of Methamphetamine and Amphetamine while the children were in his care and supervision. On 02/18/2015 and 02/26/2015 the father had positive toxicology screens for Methamphetamine and Amphetamine. The children are of such a tender age that requires constant care and supervision. The father has a criminal conviction for Possession of a Controlled Substance. The father's illicit drug use endangers the children's physical health and safety, and places the children at risk of serious physical harm, damage, and danger."

tested negative on June 8, 2015. Mother was in compliance with all aspects of her drug program but was behind on attendance at 12-step meetings.

**Disposition**

The dispositional hearing took place on July 1, 2015. DCFS recommended that the children be removed from father and remain with mother, with mother to receive family maintenance services and father to receive enhancement services and monitored contact with the children. Minors' counsel joined in DCFS's recommendations. Both mother and father requested that the court order the children to remain in the home of both parents so that the family could reside together in one home.

Father testified that he had been attending narcotics anonymous meetings once or twice a week since the case began in March 2015, although he could not find his attendance records for the months prior to June. He stated that he could not continue his drug treatment program at El Projecto del Barrio because his Medi-Cal insurance coverage was terminated, but he was in the process of re-applying to Medi-Cal. Father claimed to have visited his children for a half-hour daily on his way to work. He worked six days a week from 1:00 p.m. to 9:00 p.m. He wanted to return to the family and get help. Father was willing to enroll in another drug treatment program.

On cross-examination, father admitted he was now 33 years old and had been using methamphetamine since he was 18 or 19 years old, with the exception of the time he had spent incarcerated. He claimed he had not used drugs in the eight months since the case opened. He last participated in a drug treatment program about a month or a month and a half earlier. He stated that once he had Medi-Cal again he could enroll in another program. Father's counsel argued that DCFS had not shown a risk of harm to the children especially because father was testing clean, participating in narcotics anonymous meetings, and was willing to enroll in a drug treatment program.

The court found by clear and convincing evidence pursuant to section 361, subdivision (c), that there was a substantial danger if the children were returned to their father and there were no reasonable means to protect the children without removing them from father. The children were ordered removed from father, with whom the children

resided at the time the petition was filed. The court found that reasonable efforts were made to eliminate the need to remove the children from father. The court ordered family reunification services for father.

Father was ordered to complete a full drug and alcohol program with random on-demand testing, a 12-step program with a court card and sponsor, and individual counseling to address child safety issues, substance abuse, and parenting. The court set a 90-day progress hearing to address father's compliance with his case plan, liberalization of visits, and any possible recommendation that father return to the family home. The court also set a six-month review hearing.

On July 15, 2015, father filed a timely notice of appeal.

## DISCUSSION

### I. Applicable law and standard of review

Under section 361, subdivision (c)(1), a juvenile court may remove a dependent child from a custodial parent where there is clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

A dispositional order removing a child from a parent is reviewed for substantial evidence. (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.) Under this standard, we must review the entire record to determine if there is any evidence, whether or not contradicted, that supports the juvenile court's decision. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1649.) "'All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.'" (*In re David H.* (2008) 165 Cal.App.4th 1626, 1633.) We do not reevaluate the credibility of witnesses, resolve conflicts in the evidence, or reweigh the evidence. (*In re A.E.* (2014) 228

9

Cal.App.4th 820, 826.)  The ultimate question is whether it was reasonable for the trier of fact to make the ruling in question in light of the whole record.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)

## II.  Substantial evidence supported the removal order

### A.  *The evidence supports the court's finding that a substantial danger to the children existed*

Father first argues that the juvenile court erred in finding clear and convincing evidence that a substantial danger to the physical health and emotional well-being of the children existed at the time of the order.  Father argues that this is not an extreme case of parental abuse or neglect justifying removal from father's custody.

Father compares this case to *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288-292 (*Jasmine*).  In *Jasmine*, the child was removed due to the parents' use of corporal punishment, a practice the parents agreed to stop.  The juvenile court ordered removal of the child due to the social worker's opinion that the parents did not have sufficient insight into the corporal punishment issues.  The Court of Appeal reversed the removal order, finding that the opinion of the social worker was too speculative to provide sufficient evidence for such action by the juvenile court.  (*Id.* at pp. 288-289.)  Because both parents had forsworn corporal punishment, expressed remorse, attended parenting classes and therapy, there was no clear and convincing evidence of a substantial danger to Jasmine at the time of the removal order.  (*Ibid.*)

*Jasmine* is distinguishable from the matter before us.  Here, father has used methamphetamine consistently for approximately 15 years, with the exception of time he spent incarcerated.  The juvenile court found that such drug use endangered these young children's health and safety and placed them at substantial risk of harm.  Father does not contest the factual findings regarding his long history of drug use.  While father may have had good intentions, father was not enrolled in a drug program and had recently been dismissed from a drug program.  The juvenile court had no reason to believe that the children were not in danger from father's drug use.  The Legislature has recognized that "[t]he provision of a home environment free from the negative effects of substance abuse

10

is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)  The evidence supported the juvenile court's finding that father's drug use, and his failure to successfully complete a drug program, presented a substantial danger to the children.

We also find *In re James T.* (1987) 190 Cal.App.3d 58 (*James T.*) to be distinguishable.  There, the juvenile court removed a 16-year-old boy from his mother's custody where there was tension between the mother and son, the mother suffered from economic instability and harbored animosity towards the boy's father, who had deserted them.  While upholding jurisdiction, the Court of Appeal reversed the removal order, finding that "the composite of [the facts of the case] falls far short of the statutorily defined cases justifying state intervention to sever, if even temporarily, the parent-child relationship." (*Id.* at p. 65.)  In *James T.*, there were no allegations of drug abuse, only financial and emotional issues.  Thus the case provides no support for father's arguments that his drug abuse does not provide a substantial risk to his children.[4]

*In re Christopher R.* (2014) 225 Cal.App.4th 1210 (*Christopher R.*), is instructive. In *Christopher R.*, the father acknowledged that he had smoked marijuana on and off since he was 14 or 15 years old and his use had increased to one or two times per day. However, he claimed that he had completely stopped two weeks before his daughter was born. (*Id.* at pp. 1213-1214.)  Father was a former gang member who was on probation for a vandalism charge.  He argued that the evidence of his past marijuana use and criminal history was insufficient to support a finding that he could not care for his

---

[4]     Father also cites *In re Steve W.* (1990) 217 Cal.App.3d 10 (*Steve*) as support for overturning the removal order.  Again, we find the case inapposite.  In *Steve W.*, the juvenile court removed an infant from the physical custody of mother because father had killed the infant's five-year-old brother.  The juvenile court admitted that there was no evidence that mother had done anything to injure either of her children.  However, the court speculated that mother might enter another relationship with a violent man.  The Court of Appeal reversed.  Mother was not present when the child was injured, made inquiries as to the reasons for the injuries to the child, assisted with the prosecution of the children's father, and expressed a desire never to have anything to do with the man again. Again, there was no evidence that mother was a chronic drug user, as is the case here.

daughter or justify removal from his custody. (*Id.* at pp. 1214-1215.) The Court of Appeal affirmed the juvenile court's decision, holding "on this record the juvenile court properly found [father's] persistent and illegal use of marijuana demonstrated an inability to provide regular care for [the] infant." (*Id.* at p. 1220.)

Similarly, here, father has a long history of drug use, having used methamphetamine for approximately 15 years until right before the petition was filed in March 2015. He had served eight months in jail for possession of methamphetamine. And in spite of participating in drug treatment programs in the past, he continued to use methamphetamine. There was evidence that his methamphetamine use affected his family life. Father had been excluded from the family home in January 2015 due to his drug use. Since that time, he had been living as a transient, staying with friends or in motels. In addition, at the relevant times father's children were all under six years old. Because the children were of "'tender years,'" "'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.' [Citations.]" (*Christopher R., supra*, 225 Cal.App.4th at p. 1219, quoting *In re Drake M.* (2012) 211 Cal.App.4th 754, 767.)

Father argues that his testimony at the dispositional hearing shows that his dismissal from the drug treatment program was due to his health insurance, not his behavior. However, the juvenile court was not required to believe father's testimony regarding the reasons for his dismissal. The court noted that "there are many programs in L.A. county that don't require Medi-Cal." The court encouraged father not to wait for Medi-Cal but to "immediately enroll in a drug counseling program." These words suggest that the juvenile court did not believe that father's insurance status was the reason for his failure to remain involved in a drug rehabilitation program. The letter from father's drug counselor did not suggest that father's dismissal was due to insurance issues. It was entirely within the juvenile court's province to accept or reject father's testimony, and we decline to reweigh the evidence before the court.

We find that substantial evidence supports the order removing the children from father's custody.

12

### B. The evidence supports the court's finding that father was a custodial parent

Father further argues that there was insufficient evidence that removal was proper under section 361, subdivision (c) because the evidence showed that father was not living with the children at the time the petition was filed. Again, we disagree, and find that the evidence supports the juvenile court's finding that section 361, subdivision (c) was the applicable provision.

Section 361 addresses a child's removal "from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated." (§ 361, subd. (c).) In support of his argument, father relies on *In re B.L.* (2012) 204 Cal.App.4th 1111, 1111-1117. In *B.L.*, the paternal grandparents, not the parents, had legal custody of the child at the time that the child was removed from the parents under section 361. The Court of Appeal noted, "[t]hus, only the paternal grandparents, as [the child's] legal guardians, and not the parents, were entitled to receive reunification services pursuant to section 361.5." (*B.L., supra*, at p. 1116.) Father argues that there can be no removal of custody from a parent who does not have custody. In the present case, although father hoped to move back in with the family, father contends that the children were not in father's physical custody at the time they were removed from him by the juvenile court. Father argues that the removal order must therefore fail on its face.

Initially, we note that father did not contest the juvenile court's factual finding that father was a custodial parent. Reading the record as a whole, there is no question that the juvenile court believed, based on an abundance of evidence before it, that father lived with the children from the time of their birth to the filing of the petition. Father never corrected the court or disagreed with the court's pronouncements that father was at all times a custodial parent, including at the time the petition was filed. Thus, father has forfeited the argument on appeal. (See *In re John M.* (2013) 217 Cal.App.4th 410, 420 ["we conclude father forfeited the issue by his failure to raise it in the dependency court, which would have permitted the court to determine the applicability of section 361.2 and rule on the issue with an adequate record and argument"].) Further, as DCFS points out,

father would not have been entitled to custody of the children even if he were a noncustodial parent, since the children were never removed from mother's custody.[5] Thus, there is no prejudice to father even if the juvenile court cited the wrong statute. (See *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1452 ["Even though the dependency court's finding were phrased in the language of section 364, not section 361.2 . . . we may affirm the order"].)

However, even if we were to consider the merits of father's argument, we would find there is ample evidence in the record to support the juvenile court's conclusion that father was a custodial parent and was residing with the children at the time the petition was filed. The record shows that mother and father were living together at the paternal grandparents' home until father was excluded from the home in late January or early February 2015. However, since mother continued to allow father to come to the residence, she was also excluded. Father continued to care for the children when mother was hospitalized in mid-February 2015, and DCFS observed father and the children at the paternal grandparents' home at that time. After mother and father left the grandparents' home, they lived together with the children at the Goldstar Inn. The single address listed for both parents on the section 300 petition is that of the Goldstar Inn.

Father represented on his Statement Regarding Parentage form that the children had lived with him from birth to present.[6] During the detention hearing, father's counsel represented that father was "willing to move out of the mother's home" if the court was inclined to detain only from father. Again, this was an implicit representation that the parents were living together at that time. Mother's counsel also noted at the detention

---

[5] If father were a noncustodial parent and the children were removed from mother, father would be considered for custody pursuant to section 361.2. There is no evidence in the record that father ever made a request for custody pursuant to section 361.2, subdivision (a).

[6] While there was a discrepancy between the date father signed the Statement Regarding Parentage and the date it was filed, there was no evidence in the record of any fraud or perjury related to the document. The juvenile court was entitled to rely on it and the statements made therein, as it did in granting father presumed father status.

14

hearing that DCFS was aware of "the parents' residence at the Goldstar Inn." These representations made in court strongly suggest that the parents were living together at the time the petition was filed. Father was reminded in court that day that he was not to return to the motel with his family. Neither father nor his counsel made any indication that the court's understanding that he was living at the motel with mother was incorrect.

There was some conflicting evidence in the record. In an interview on April 1, 2015, mother stated that father was not living with her after February of 2015. There was also evidence that father claimed he lived with the family until January or February of 2015. However, mother made an additional statement that father moved out of the family home after the detention hearing. Despite the conflicting evidence, we find the record amply supports the trial court's implicit finding that father was residing with the children at the time the petition was filed on March 6, 2015. Thus, removal under section 361, subdivision (c) was proper.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT

15