Filed 12/31/24  In re Layla T. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re LAYLA T. et al., Persons Coming Under the Juvenile Court Law. | B331527 (Los Angeles County Super. Ct. No. 18CCJP07622) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>BRIGITTE L.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant Brigitte L.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Respondent Christopher T.

_____

Brigitte L. (Mother) appeals from the final juvenile custody order entered by the juvenile court when it terminated jurisdiction over 13-year-old Layla T. and six-year-old Angel L. at the Welfare and Institutions Code[1] section 364 hearing. Mother contends the court abused its discretion in granting Christopher T. (Father) sole legal custody of the children. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Petition and First Amended Petition*

In June 2020 Layla and Angel were living primarily with Father, who had sole physical and legal custody of the children pursuant to a 2017 juvenile custody order. The children spent every other weekend with Mother, who lived with her boyfriend Curtis B. and their children, two-year-old Kayla B. and eight-month-old Kyle B. On June 9, 2020 the Department of Children and Family Services (Department) received a referral alleging Mother had been drinking heavily and was abusing prescription drugs while caring for the children.

In an interview with a Department social worker, Mother admitted to having a history of drug abuse and stated she was

_____

[1]    Further statutory references are to the Welfare and Institutions Code.

2

currently participating in a methadone program. Mother also reported a history of mental illness and said she had been diagnosed with anxiety. Mother had a prescription for medication to treat panic attacks that she took one or two times per day. She denied drinking alcohol while taking the prescription medication.

Father told the social worker that Layla had reported Mother drinks alcohol and sleeps most of the time when Layla and Angel visit. Layla complained that Mother did not pay attention to her and Angel. Layla was scared to sleep at Mother's home because she felt she needed to be awake to care for Angel and her half-siblings. When Father asked Mother about Layla's statements, Mother denied she drank or ignored the children.

Father's sister, Lucy T., who assisted in taking care of Layla and Angel, said Layla was quiet and withdrawn after visiting Mother. Layla also had suicidal ideation after her visits. Layla told Lucy that Mother recently fell asleep while driving with the children in the car and Mother once dropped Kyle after falling asleep while holding him. Angel would scream and cry when Mother picked him up for visits.

Angel told the social worker he did not feel safe at Mother's home. Layla said that when Mother was drunk, Layla was "really scared" to be in the home. Layla explained, "I don't always like my mom because she cusses and makes the wrong choices. . . . My mom would drink too much. She couldn't walk, she would stumble and knock things over and break them." One time she fell over Angel. Mother also shoplifted in front of the children. Layla added that Mother "lies about everything."

Lucy provided the social worker with a copy of Layla's journal. In an entry dated February 16, 2020 Layla wrote, "I

3

can't stop thinking about killing myself. . . . My [mother] makes me feel so bad because she is a terrible person and it makes me feel bad because I know she'll never change." Layla admitted she wanted to hurt herself, especially when "there was a lot going on at [Mother's] house." Layla told the social worker, "I just want my mom to be a different person. I wish she was different and she treated me better."

On August 20, 2020 the Department filed a petition alleging Layla and Angel came within the jurisdiction of the juvenile court under section 300, subdivisions (a) and (b)(1).[2] The petition alleged Mother had an extensive history of illicit drug use, including heroin, marijuana, and alcohol, and she was a current abuser of alcohol, prescription drugs, and methadone; Mother had mental and emotional problems, including diagnoses of panic disorder, borderline personality disorder, antisocial personality disorder, and anxiety; and Mother had provided inadequate supervision of the children on multiple occasions. The petition also alleged Father failed to protect the children from Mother's substance abuse and inadequate supervision.

At the August 25, 2020 detention hearing, the juvenile court detained Layla and Angel from Mother and released them to Father under the supervision of the Department. The court ordered monitored visitation twice per week for Mother and weekly sibling visits.

---

[2] The petition was also brought on behalf of Kayla and Kyle and contained allegations against Curtis. The allegations pertaining to Kayla and Kyle are not at issue in this appeal. For ease of reference, we refer to Layla and Angel as "the children" and Kayla and Kyle as the "half-siblings."

In the jurisdiction and disposition report filed on September 18, 2020, the Department stated Mother was not forthcoming about her prior substance abuse treatment and mental health needs. Mother lacked insight into how her behavior affected her children, particularly Layla. Despite Layla's statements she was suicidal due to Mother's behavior, Mother denied Layla's accounts and stated Layla's issues were a result of not getting enough attention. A month later the Department reported Mother continued to deny any wrongdoing, claiming the case was about her breakup with Curtis.

In October 2020 the Department received a referral alleging Father had recently smoked "crystal meth" in front of Layla and Angel. Father admitted he was addicted to "crystal meth" and had been using drugs frequently for years. However, he denied using drugs in front of the children or being under the influence in their presence. Father consented to the removal of the children from his custody so he could enroll in an inpatient substance abuse treatment program. The children were removed from Father and placed with Lucy.

On January 15, 2021 the Department filed a first amended petition, which included the allegations in the prior petition and an allegation pursuant to section 300, subdivision (b)(1), that Father had a history of illicit drug use and was a current abuser of methamphetamine.

At the January 25, 2021 jurisdiction and disposition hearing, the juvenile court sustained the allegations against Mother and Father and removed Layla and Angel from the parents' custody. For both parents, the court ordered monitored visits and reunification services, including a minimum six-month drug and alcohol program and individual counseling.

B.    *The Six-month Review Hearing*

As of July 2021, the children were living with their paternal grandmother, Maria T.  Layla continued to have suicidal ideations and negative thoughts after visiting with Mother.  Layla stated she no longer wanted to visit Mother because it made her feel unsafe.

Father was compliant with his case plan and was employed.  However, his work schedule made it difficult to complete his drug testing requirements and participate in the children's services.  Mother was not in compliance with her case plan.  She had missed several drug tests, and there was a concern she had been under the influence during her parenting classes.

At the six-month review hearing on July 19, 2021, the juvenile court returned the children to Father's care under the supervision of the Department on the conditions that Father and the children reside with Maria and Father stay in his current programs.  Mother continued to have monitored visitation.

C.    *The Subsequent and Supplemental Petitions*

On September 8, 2021 the Department filed a subsequent petition under section 342 alleging Father had left the children with Maria without making a plan for their ongoing care and supervision.  On the same day the Department filed a supplemental petition pursuant to section 387 alleging Father had failed to comply with his case plan, including missing 11 drug tests.  According to the Department, Father left the children with Maria for approximately five days in late August without telling anyone where he was going.  When he returned, he told the social worker he had gone out drinking with some friends and did not want to return home under the influence.  He admitted he had made a mistake and was depressed.  At the detention

6

hearing on September 10, 2021, the juvenile court removed the children from Father's custody and placed them with Maria.

In October 2021 the Department informed the court that Angel had been diagnosed with autism spectrum disorder and attention-deficit/hyperactivity disorder. Angel did not understand social cues and could be disruptive and aggressive. Mother visited with the children inconsistently, and Layla continued to say she did not want to see Mother. Layla told the social worker that she attended the visits only "so that my mom doesn't do anything to my brother. She used to try to brainwash me and tell me my dad's family are not good people."

In late October Layla was hospitalized and held on a psychiatric hold due to her stated desire to harm herself, Mother, and a friend who had irritated her. She stated in a letter she wanted to harm her mother "really bad." The juvenile court approved the administration of psychotropic medication for Layla. Mother disagreed with the plan to give medication to Layla. Layla was discharged, but she was hospitalized again a few weeks later due to her self-mutilation.

The juvenile court sustained the allegations in the subsequent and supplemental petitions at the jurisdiction and disposition hearing held on November 29, 2021. The court removed the children from Father's custody and ordered reunification services for both parents. The minors' counsel informed the court that Layla "is finding visitation with her mother to be very distressing to her." The family told counsel that, after visits with Mother, Angel acted "very aggressively, and he gets very agitated when Mother is mentioned to him." Accordingly, minors' counsel requested any visitation with

Mother be in a therapeutic setting. The court granted the request as to Layla.

D.    *The Review Period Prior to Termination of Jurisdiction*

In May 2022 the Department reported Layla had been hospitalized a total of five times between November 2021 and April 2022 and had been diagnosed with major depressive disorder with characteristics of borderline personality disorder. Layla reported being triggered by visits with Mother or talking about Mother. Angel received special education services, including behavioral therapy. His therapy program recommended he receive at least 20 hours per week of behavioral therapy.

In March 2022 Father enrolled in a four-month residential substance abuse treatment program. As of May 2022 he was continuing with individual therapy and had been visiting the children consistently.

Mother was not in compliance with her case plan. She was discharged from multiple substance abuse treatment programs and was not consistently attending therapy sessions. She was also inconsistent with visitation and failed to form a bond with Angel and Layla. Mother told the social worker she was upset that her visits with the children were monitored, stating "it makes no sense" that she could not "have contact" with her children. Layla continued to refuse visitation even in a therapeutic setting. Angel initially refused to visit with Mother, but he began attending visits with encouragement from the monitor.

In February 2023 the Department reported Layla had made progress implementing coping skills to decrease self-harming behaviors. Layla continued to be triggered when

8

discussing Mother. The Department reported Layla was "adamant that she does not want to reunify with her mother" and "she would like for the Courts to terminate [Mother's] parental rights." Layla stated, "The thought is scary to think that she can have control over me. I do not feel safe being around her, and I am scared for my brother." Layla expressed that she was tired of worrying about the possibility of reunification. Layla was also concerned about Angel having contact with Mother because Angel was unable to communicate his needs and Mother did not acknowledge Angel's autism diagnosis.

Mother was by this time making progress on her case plan. However, she continued to minimize the effect of her past behavior on the children, stating they had always been happy in her care and they were being manipulated by Father's family. Mother consistently visited with Angel once per week, but Angel told the social worker he did not want to be alone with Mother.

At the 18-month review hearing on February 28, 2023, the juvenile court returned the children to Father's custody under the supervision of the Department. Mother's reunification services were terminated by operation of law due to the home of parent order for Father.

E.   *Termination of Jurisdiction and the Final Custody Order*
By the time of the June 26, 2023 status review hearing, Mother continued to make progress on her case plan. Mother's visits with Angel had been consistent, but Angel recently refused to attend the visits. Mother did not understand why Angel refused to be alone with her. Layla continued to refuse any contact with Mother and stated she did not want Mother to have any rights over her.

At the status review hearing, Father's counsel requested the juvenile court terminate jurisdiction over the children and award Father sole physical and legal custody. Layla and Angel's counsel agreed with Father's request, noting the children had been doing well living with Father and Maria, and Father had shown he was capable of meeting the children's needs and enrolling them in necessary services. The Department requested the court continue family maintenance services for three months, noting that more time was needed to ensure all services were in place for Angel. Mother's counsel joined the Department's recommendation to keep the case open, but she argued for joint legal custody and unmonitored visitation if the court terminated jurisdiction.

The juvenile court terminated jurisdiction over Layla and Angel and entered the final juvenile custody order the same day. The custody order granted sole physical and legal custody to Father. The attached visitation order granted Mother monitored visitation for a minimum of three hours per week, stating monitoring was necessary because Mother failed to make substantial progress in conjoint counseling with the children.

Mother timely appealed from the final juvenile custody order.[3]

---

[3] The Department submitted a letter in lieu of a respondent's brief explaining it had recommended the case remain open and took no position on whether the juvenile court should award sole or joint legal custody. Father, through appointed counsel, filed a respondent's brief requesting we affirm the juvenile court's order, asserting it was well within the court's discretion.

## DISCUSSION

When the juvenile court terminates jurisdiction, "'section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.'"[4] (*In re Chantal S.* (1996) 13 Cal.4th 196, 203; accord *In re C.W.* (2019) 33 Cal.App.5th 835, 862-863.) In determining custody or visitation, the court's primary consideration is the best interests of the child. (*Chantal S.*, at p. 206; *In re John M.* (2013) 217 Cal.App.4th 410, 421; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) We review a custody order for an abuse of discretion. (*C.W.*, at p. 863; *In re Maya L.* (2014) 232 Cal.App.4th 81, 102.) "[W]hen a court has made a custody determination in a dependency proceeding, "'a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'"" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; accord, *C.W.*, at p. 863.)

Mother does not challenge the juvenile court's termination of jurisdiction or the award of sole physical custody of Layla and Angel to Father. Mother contends only that the juvenile court abused its discretion in awarding Father sole legal custody of Layla and Angel. Mother argues joint legal custody was warranted because both children have special needs and it would benefit the children to have "a second legal parent" who "can

---

[4] If no family law action is pending, the juvenile court's final custody order "may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides." (§ 362.4, subd. (c).)

11

approve services and enable their provision." However, this argument ignores the fact that both children expressed serious reservations about spending time with Mother. Layla was adamant that Mother should have no control over her, and any discussion of Mother was a trigger for Layla's substantial mental health issues. Similarly, Angel consistently expressed through his words and conduct that he felt unsafe with Mother. Mother has not explained how the potential convenience of having a second parent to legally coordinate services would be in the children's best interests given the potentially significant negative impact Mother's involvement could have on the children. In addition, Mother continued to lack insight into the children's mental health and developmental issues and was unable to understand why the children did not want to have contact with her.

Mother also argues a second parent with legal authority would be in the children's interests because Father repeatedly had been "unavailable and unreachable for days on end." But the two incidents in which Father was unavailable occurred in late 2020 (when he could not be reached for a week) and 2021, almost two years before the June 2023 hearing. No concerns about Father's availability had been raised since that time. Furthermore, by terminating jurisdiction, the juvenile court necessarily found the risk of harm based on Father's actions no longer existed—a finding Mother has not disputed.

Finally, Mother asserts joint legal custody would facilitate sibling visitation with Mother's younger children. But Mother does not explain how legal custody would impact visits with the half-siblings, nor does she explain why such visitation was in the children's best interests.

On these facts, the juvenile court acted within its discretion in determining that awarding Father sole legal custody was in Layla's and Angel's best interests.

## DISPOSITION

The final juvenile custody order is affirmed.


                                        FEUER, J.

We concur:



MARTINEZ, P. J.



SEGAL, J.